## ALFRED JOHNSON v. ELLA LEGGETT.

1. BREACH OF PROMISE OF MARRIAGE; *Instruction, Not Error.* In an action for breach of promise of marriage, in which the plaintiff testifies positively to the making of the marriage contract, and in which there is testimony of long-continued attentions paid by the defendant to the plaintiff, it is not error to instruct the jury that they may take into consideration, in support of the express contract testified to by her, the facts and circumstances accompanying the acquaintance of the parties, his visits to her, his escort of her to meetings and social gatherings, and in fact the whole of their intercourse.

2. INSTRUCTION, *Which Might Have Been Given, Refusal of.* The mere fact that a court refused to give an instruction asked by one of the parties which it might properly have given, does not prove that such refusal

was an error working substantial injury to the rights of the party asking the instruction.

3. IMPEACHMENT OF WITNESS; *Rule; Exception.* The general rule is, that a party may not impeach his own witness; and while the court may sometimes, when it appears that a party is surprised by the testimony of a witness he has called, permit him to show what testimony he expected from the witness, and what reason he had for such expectations, and thus either directly impeach the witness or counteract any injurious effect which such unexpected testimony may have with the jury, yet this is a privilege which should seldom be exercised, only in extraordinary cases, and when it appears that material injury will otherwise result to the party.

4. VERDICT, *When Set Aside — When Not.* It is the duty of a trial court reviewing the action of a jury to unhesitatingly set aside the verdict whenever they have manifestly mistaken the evidence and the verdict is manifestly erroneous; but where the testimony is very conflicting and presents a doubtful question of fact, one upon which different minds, justly and carefully weighing the testimony, may be expected to arrive at different conclusions, then the trial court should not disturb the verdict, although its judgment may incline to a different conclusion than that reached by the jury. The jury are the triers of fact, and it is not the duty of the trial court to substitute its judgment for that of the jury, but simply to interfere to prevent manifest error.

### *Error from Franklin District Court.*

ACTION by *Ella Leggett* against *Alfred Johnson,* to recover damages for a breach of promise of marriage. Verdict and judgment for plaintiff for $1,250, at the January Term, 1882, of the district court. The defendant brings the case here. The opinion states the facts.

*Thacher & Barker,* and *C. B. Mason,* for plaintiff in error:

1. The court erred in instructing the jury as follows:

"The jury are authorized to take into consideration, in support of the express promise alleged on the part of the plaintiff, the facts and circumstances accompanying the acquaintance of the parties, the visits of the defendant to the plaintiff, his accompanying the plaintiff to meetings and social gatherings — in fact, the whole intercourse of the parties; and if from all the evidence you are satisfied that the contract testified to by the plaintiff was entered into, you will be authorized to find for the plaintiff."

It was undoubtedly true, prior to the change in the law of evidence, whereby parties were permitted to give evidence, that marriage contracts were in some cases sought to be upheld in the manner given by the court to the jury; but this instruction was erroneous in this, that the inferential promise of marriage was given to the jury as a support for the alleged specific contract of marriage. If there was a specific contract, then the inferential promise was unnecessary; if there was no specific contract, then in either case too great prominence was given in the charge to the visits of the defendant to the plaintiff. This exact instruction has been commented upon, as we think, in *Walmsley v. Robinson*, 63 Ill. 41. There the jury were told in substance "that the promise of marriage might be inferred from the conduct of the parties and the circumstances which usually attend an engagement of marriage, as visiting, the understanding of friends and relatives, preparations for marriage, and the reception of the defendant by the family as a suitor." The supreme court in passing upon this instruction declares it too broad. "We think the instruction should not have been given." "It by no means follows, because a gentleman is the suitor of a lady and visits her frequently, that a marriage engagement exists between them. If this were so, it would be dangerous for an unmarried man to pay attention to an unmarried woman." It was said by the court that the tendency of juries in such cases "was to lean to the side of the women." Never had this a clearer exemplification than in this case now before the court.

2. In connection with the charge of the court, the defendant Johnson requested the court to give the following charge to the jury:

"If the plaintiff stated to the defendant, or to others who repeated her statements to the defendant, that she was engaged in marriage to a person named Artz, and the defendant believed it, it makes no difference in the case whether in fact she was so engaged." "If the defendant only paid such attentions to the plaintiff as a man might pay to a woman engaged to another, in consequence of plaintiff's statements to

defendant that she was so engaged, then the plaintiff cannot rely on such attentions to prove or substantiate a promise of marriage."

The necessity of this charge, in connection with the charge already given by the court to the jury, will be seen on a little consideration of the testimony given in the case.

It appears from the testimony of many witnesses that the plaintiff had represented not only to the defendant, but to various other parties, that she was engaged to a young man at her old home in Illinois, by the name of Artz. This appears by the defendant's own testimony, which the plaintiff put in as part of her case, being the so-called deposition of the defendant, in which it is in evidence that he addressed several letters for the plaintiff to Samuel Artz, sometimes in San Francisco, sometimes at Oregon, Illinois. From this testimony and that of other witnesses, it would seem that the plaintiff gave out that she was engaged to a man by the name of Artz, in Illinois. The court having charged the jury that the visits of the defendant to the plaintiff might be considered by them in proof of the marriage contract, it became important and relevant that the jury should be instructed that if the visits and the intercourse had been made on the supposition of an engagement of the plaintiff to another person than the defendant, then they would not have the same weight or influence as they would have were they addressed to an unengaged person. The plaintiff, to negative this story that she had circulated with respect to her engagement to Artz, (nowhere denying it herself or that she had given currency to it,) introduced in evidence the deposition of some witnesses in Illinois by that name to the effect that there was no such person there to whom she could become engaged. Now the jury should have been told that she was bound by her statements; that Johnson was not required to ascertain whether she was or not an engaged person.

It is quite evident that two persons who are engaged to different parties might treat each other with much more freedom, knowing of their mutual engagement, than they other-

38 — 28 KAS.

wise would. If Artz was a myth, it would make no difference if the defendant really believed that she was engaged to such a person; and after the court had seen fit to instruct the jury as to the relations and general intercourse of the parties, as they seemed on the theory of the marriage contract, it would seem very clear that the jury should have been instructed on the other branch of the case also. For it may well be believed that Johnson would not have been so frequent a visitor to her house had he not known that she was engaged to another, and hence his conduct would not be misconstrued.

3. The court below certainly erred in refusing the second instruction asked for by the defendant. If the defendant paid only such attentions to the plaintiff as a man might properly do to a young lady who was engaged to another, and they were paid in accordance with that understanding, she could not make them the basis of a promise of marriage between herself and defendant. It is the case of a young woman, a stranger, coming into a country where there are few unmarried men, herself poor and born out of wedlock, telling that she is engaged to a young man back in the village from which she came; under these circumstances she receives visits from the defendant, who was in charge of the house in which her family lived, and attempts to make these attentions the basis of a promise of marriage. Under these circumstances, it would seem to be the duty of the court to instruct the jury upon so vital a point.

4. The ruling of the court in regard to the testimony of Jane Hedges we think is error in this case. It is true that as a general rule, the weight of authority in this country is to the effect that a party cannot discredit his own witness by statements claimed to be at variance with his testimony, but this rule has its exceptions. (2 Metc. [Ky.] 17; 1 Browne, [Pa.] 176.) In the case at bar the latter doctrine commends itself to the favorable consideration of the court. While in a great measure the conduct of the examination of witnesses must be left to the discretion of the court and its ruling under the circumstances, yet it seems to us that taking into account

the nature of the case, the intimacy disclosed as existing between the plaintiff and the witness as shown by her testimony the evident hostility of the witness to the defendant in this case, and the alacrity with which the witness displayed her bias and prejudice in favor of plaintiff, all tended to show that the truth could not be extracted in any other way than by showing her declarations made at a time when there could have existed no incentive to mendacity.

The necessity of the cases that have been tried has in England resulted in the following provision in the Common-Law Procedure, § 22, [quoted in the opinion, *infra*.] See Jacob Fisher's Digest, 5098.

The duty of examining counsel is here pointed out, and this was the course offered to be pursued, but the court ruled that the objection made by counsel below should be sustained. And of this we complain, although the code of Kansas has no similar provision to that above cited. The cardinal feature of our code is to assist the parties in obtaining justice. The spirit controlling the practice of law under the code is, and of right ought to be, in harmony with that object. We cannot conceive of an instance in which a more flagrant injustice could be perpetrated by the sustaining of an objection, and we think it at least an abuse of discretion which is a manifest error in this case.

5. [Counsel's review of the evidence, omitted.]

We now have the testimony of nine witnesses, all of them contradicting the statement of the plaintiff as to the engagement between herself and the defendant. It was in view of this testimony, in which the mass and preponderance were in favor of the defendant, that the court was called upon to review on a motion for a new trial the sufficiency and preponderance of the evidence. In support of the motion for a new trial, the case of *Williams v. Townsend*, 15 Kas. 564, was cited; but the court overruled the motion, flatly refusing to weigh the evidence in the cause. This was error. This court has laid down certain salutary rules as to the duties of the trial court in relation to setting aside the verdict as against

the evidence. The trial court is bound to examine and determine, on the motion for a new trial, the sufficiency of the evidence in the case. If the court had done so in this case, the verdict would have been set aside. The rule laid down by the court in this case, is the rule which obtains in the supreme court, that where there is any evidence to sustain the verdict, the supreme court will not interfere with the finding of the court below. This application of the rule we think is error. And where the court below has failed to consider the question of the preponderance of the evidence, the verdict should not be sustained.

It is undeniable that the trial court held its duty done when it saw there was *some* evidence to sustain the verdict. In fact, it ruled that the supreme court had stated the duty of the trial court too strongly in *Williams v. Townsend,* supra.

In this case the most cursory review of the evidence shows how imperative it was for the court below to have considered the evidence adduced, and to have seen where the preponderance lay. In shutting its eyes to the question presented, the court seriously erred.

*C. R. Meigs,* and *A. W. Benson,* for defendant in error:

It is claimed that the charge authorizing the jury to take into consideration, in support of the express promise, the facts and circumstances accompanying the acquaintance of the parties, their visits, etc., is erroneous within the decision in *Walmsley v. Robinson,* 63 Ill. 41. A careful examination of that case, however, leads to an opposite conclusion. There, the jury were authorized to *find* the promise, from the facts and circumstances detailed. Here, they were told that they might consider them in *corroboration* of the express promise sworn to. Manifestly this is correct. (12 Reporter, 93.)

The defendant asked for an instruction based upon certain statements attributed to the plaintiff concerning a mythical person named Artz. As requested, the instruction would certainly have misled or at least mystified the jury. Whatever there was about this man Artz, was before the jury,

among the "facts and circumstances" concerning which, as we have seen, the jury were already instructed. But it contains a manifest error, for even though the plaintiff was engaged to another, if the defendant, knowing that fact, (as he now claims,) still promised to marry her, he must be held liable for his default. Besides, it clearly appears from the despositions of both parties, that no such person was in existence. This Artz matter was a collateral issue, brought into the case by the defendant as a sort of counter-irritant.

The suggestion that persons engaged, but not to each other, may fairly be presumed to treat each other with greater freedom than they otherwise would, is certainly an unsound proposition in law and morals.

The ruling upon the testimony of the witness Jane Hedges is correct. Indeed, this is admitted to be so under the general rule, but it is claimed that an exception ought to have been made in this case. No surprise, accident, or other reason to take this case out of the admitted rule, is suggested; but it is in effect argued that in order to do justice in this particular trial, a rule of evidence well known and long established ought to have been set aside. It is safer to follow the "old paths."

Finally, the broad claim is made that the preponderance of the evidence is with the defendant, and for that reason the verdict ought to have been set aside. It is argued that the facts are first to be passed upon by the jury, and next by the court; that the revision by the court is not to be confined to the question whether the verdict is supported by legal evidence, and is free from fraud, but to ascertain where the preponderance of the evidence, in the judge's opinion, rests. That is, that the judge, as to all questions of fact, is an appellate tribunal, whose jurisdiction may be invoked by a motion for a new trial; and this startling proposition, it is claimed, is supported by the decisions of this court. We hope it is not. Now to all this, we make two answers: First, the preponderance of the evidence is *not* with the defendant, unless it can be affirmed that a qualified and equivocal denial prepon-

derates against a clear, straightforward and unequivocal affirmation. Here is not only the engagement and promise sworn to, but all the incidents of courtship clearly stated. The defendant says in substance: "Yes, I paid these attentions, and at one time we talked of marriage, but that was broken off. True, I continued my visits as before, but it was because you asked me to." When we reflect that this was between a girl of sixteen and an experienced business man of forty, the absurdity of the defendant's claim is the more apparent. Again, the positive statements of the plaintiff, as we have seen, are supported by the evidence of the defendant's express admissions, as well as his deliberate and long-continued course of conduct. And if anything further were needed, it was supplied by numerous witnesses called by the defendant himself, showing that the prospective wedding of these parties was a matter of neighborhood talk. The young people of the plaintiff's acquaintance often asked her when the marriage was to come off, and similar questions; and one gossippy old lady undertook to provoke her jealousy by pointing out her affianced in company with another lady, saying, "There goes Alf. and his new girl." The witness said she did this "to see how Ella would take it." Another witness, who seems to have been "going somewheres," overtook Ella on the road, and although an entire stranger, forthwith asked her "when that wedding was coming off." Manifestly the defendant must have made his love affairs quite conspicuous, and his attentions very marked indeed, or he could not so easily supply the witness stand by the young and old of both sexes, so well posted upon this long-expected wedding in high life in Peoria. And yet it is seriously contended that, because this young girl, exercising the usual grace of maidenly modesty, answered these busybodies with evasion and denial, she is to be deemed as admitting that no marriage engagement subsisted! We do not insist that this court shall take judicial notice of the habits and inclinations of young people under similar circumstances, but we do say that the common knowledge of human nature which everybody may be presumed to possess clearly shows that

what are called admissions on her part are only the natural expression of maidenly reserve, secreting from too-familiar eyes the sacred affairs of the heart which other people had no business with; and even though she carried these evasions to the verge of falsehood, it is only what has been done by the sex in numberless instances. Counsel ought to remember that young girls do not usually parade the country with the legend, "I am engaged," bound upon their foreheads, even though old bachelors, exhilarated and softened by the smiles of their betrothed, may be eager to publish the fact. It is claimed further, that after Mr. Johnson had in fact married another, Miss Ella denied that "Alf." had ever asked her hand. Suppose she did. She was being teased about his "going back" on her. She was smarting under a sense of cruel wrong, and being taunted by others upon her discomfiture, sought refuge in a denial. Shall this be held an admission? The above are fair samples of the so-called admissions of the defendant; and yet it is chiefly upon such testimony that the court below was asked to find that the verdict was contrary to the evidence.

Second, if there was proper and material evidence tending to prove the issue on the plaintiff's part, and the jury, without fraud or mistake, were fairly convinced by it, as shown by their verdict, then their conclusion is final, no matter what the judges may think as to the mere preponderance of evidence. The practice contended for would overthrow trial by jury, or make the jury at best the mere adviser of the court. It would subvert a provision of the constitution, and in effect repeal a clause of the code. (Bill of Rights, § 5; Code, § 266.) Manifestly these provisions do not mean a mere preliminary trial, but a final determination of the issues, subject only to the proper revision of the court when their verdict was not sustained by the evidence, or where through fraud or mistake they have manifestly misapplied it. This case is clearly within the rule laid down by this court. (17 Kas. 145.)

Counsel say the court "flatly refused to weigh the evidence." We do not so understand it. Its judgment was appealed to by a motion for a new trial, and by argument thereon, and

its judgment sustained the verdict. The denial of the motion, in the language of this court in the case just cited, "must be taken as the certificate of the trial court that the verdict is either fully in accord with its belief upon the testimony, or else that there was such a fair and reasonable doubt as to the weight of the evidence, *pro* and *con*, that honest and intelligent minds might differ," and that therefore "the verdict must be accepted as just." Certainly any remark made by the judge in deciding the motion, made, as we may fairly suppose, to soothe the excited feelings of the losing party, cannot be considered against the legally-expressed judgment of the court—even if the remark has any proper place in the record, which we doubt.

The opinion of the court was delivered by

BREWER, J.: This was an action instituted in the district court of Franklin county by the defendant in error against the plaintiff in error, to recover damages on account of a breach of promise of marriage. The verdict and judgment were in favor of the plaintiff for $1,250, and defendant now brings the case here for review. The errors alleged are in the giving of one instruction, the refusal of two, a single ruling on the admission of evidence, and that the verdict was contrary to the evidence. The testimony discloses that the defendant was a man about forty-five years of age at the time of this alleged promise of marriage; that plaintiff was about eighteen years of age. The defendant had been living in the town of Peoria, in Franklin county, for several years. The plaintiff moved there with her mother sometime in 1876, and lived until the fall of 1879 in a house belonging to the estate of the defendant's father, and of which he had the care. The contract is alleged to have been made sometime in March or April, 1879, and the time set for their marriage was in the following November. It appears that the defendant waited on the plaintiff from about the time of her removal to Peoria until November, 1879, at which time he was married to one Miss Florence Cary. The fact of

these attentions—that he visited plaintiff, escorted her to church, to balls and parties, is admitted by him, but the frequency of these visits and the extent to which these attentions were paid is a matter about which the testimony is somewhat conflicting. The plaintiff testifies distinctly to an engagement of marriage in the spring of 1879. The defendant as positively denies any such engagement, though he admits that in 1877 there was some talk between them about the possibility of marriage. Besides the positive statements of the two principal parties, there was on each side the testimony of several witnesses as to the conduct of the two parties, their apparent relation, and statements respecting the same made by each. Upon this testimony we shall have more to say hereafter. Now the first error complained of is, that the court gave this instruction:

"The jury are authorized to take into consideration, in support of the express promise alleged on the part of the plaintiff, the facts and circumstances accompanying the acquaintance of the parties, the visits of the defendant to the plaintiff, his accompanying the plaintiff to meetings and social gatherings—in fact, the whole intercourse of the parties; and if from all the evidence you are satisfied that the contract testified to by the plaintiff was in fact entered into, you will be authorized to find for the plaintiff."

The case of *Walmsley v. Robinson*, 63 Ill. 41, is cited by plaintiff in error as an authority to show that this instruction is incorrect. We think that authority is not in point, and that the instruction as given is correct. In that case, under the instruction the jury were authorized to find the promise from the conduct of the parties, while here they were simply told that they might consider such conduct in corroboration of the promise testified to by the plaintiff. Clearly this is correct. The conduct of the parties will always make for or against the statement of either that a marriage contract has been entered into. If the parties never visit, seldom meet, manifest no interest in each other, such circumstances will tend strongly against the claim of either of the fact of a marriage contract. While on the other hand,

1. Instruction, not error.

if he is constant in his visits, pays the ordinary attentions of a suitor, frequently escorts her, and in various ways manifests a peculiar interest in her welfare, these are circumstances which clearly corroborate and tend to support her assertion of an actual marriage contract. This is the extent to which the instruction goes, and to that extent we think is a correct statement of the law.

Plaintiff further objects that the court erred in refusing to give the two following instructions:

"If the plaintiff stated to the defendant, or to others who repeated her statement to the defendant, that she was engaged in marriage to a person named Artz, and the defendant believed it, it makes no difference in the case whether in fact she was so engaged." "If the defendant only paid such attentions to the plaintiff as a man might pay to a woman engaged to another, in consequence of plaintiff's statements to defendant that she was so engaged, then the plaintiff cannot rely on such attentions to prove or substantiate a promise of marriage."

In explanation of these instructions, it may be stated that the defendant claimed that plaintiff said to him that she was engaged to a man named Artz, who lived in Illinois, in the place where the plaintiff formerly resided, and in corroboration thereof that he had at her request directed several letters to a man of that name. There was similar testimony of other witnesses in reference to her statements. On the other hand, she offered the depositions of sundry witnesses, as well as her own testimony, that this whole matter of another engagement to a man named Artz or anyone else was a myth. Now the counsel for plaintiff in error argue very strongly, that if defendant believed plaintiff to be a young lady already engaged to be married to a gentleman residing in a distant place, he might feel at greater liberty to pay her attentions — doing so not as a suitor, or with any idea of interfering with the existing engagement, but simply as perceiving her to be a young lady so situated as not likely to receive attentions from the young unmarried gentlemen in the vicinity; and that as the jury had been instructed that the fact of these attentions was

matter to be considered in corroboration of the alleged en-
gagement, they ought also to have been told to consider the
explanation given by him; and further, that attentions which
a gentleman might properly pay to a lady already engaged,
were not to be considered as tending to prove or corroborate
a contract of marriage.   We think there is great force in the
argument made by counsel, that the court might properly
have given the instructions asked; and yet the question as it
comes before us is not whether it would have been error to
have given those instructions, but whether it was error to
refuse them.   Oftentimes instructions are perfectly proper,
and the giving of them involves no error, yet at the same
time the refusal to give them is also no error.   Particularly
is this true as to instructions respecting the tendency and
effect of certain portions of the testimony.   It would some-
times tend to embarrass and perplex a jury, hinder rather
than assist them in arriving at the exact truth, if the court
were to take the different portions of the evidence and give
special instructions as to their tendency and effect.   So also
at times very slight action on the part of the court makes
undue impression on the jury, and casts the weight of the
court's supposed opinion into the jury's decision upon a
doubtful and disputed question of fact.   In the case at bar
the plaintiff asked no special instructions, and the only ones
asked by the defendant were the two above quoted and re-
fused.   In its general instructions the court sufficiently and
very fairly presented the questions of fact for the determi-
nation of the jury.   It stated to them that the plaintiff's
cause of action rested upon proof of a marriage contract;
that the plaintiff positively testified to such a contract; that
the defendant as positively denied it.   Then it gave the in-
struction heretofore quoted, of which the defendant complains
—an instruction which, as we think, was proper under the
circumstances of the case.

   It then followed with this instruction on behalf of the de-
fendant:

   "On the other hand, you may look to the denial of the de-

fendant, and to the facts testified to by the witnesses in the case in support of his denial; and if from all the evidence, the facts and circumstances testified to by the witnesses, including the testimony of the defendant, you are not satisfied that a contract of marriage did exist between the parties as claimed by the plaintiff, it is your duty to find for the defendant."

Not only did it thus place the case of the plaintiff over against that of the defendant, but it followed these instructions by limiting their inquiry to the existence of the express contract made in March or April, as testified to by the plaintiff; and told the jury that the plaintiff must stand or fall by this contract, and that all other testimony offered by her was simply to be considered as tending to corroborate her evidence of such a contract. It further stated to the jury that they were exclusive judges of the weight to be given to the testimony, and to each and every part thereof, and fully indicated to them their duty in respect to weighing and analyzing the testimony. Now it seems to us that the court having once stated the distinct question of fact to be passed upon by the jury, and indicated to them in a general way the matters outside the positive testimony of the two parties which it was their duty to consider, and also their functions in weighing and passing upon the testimony offered, it cannot be held that the court erred in failing to give the special instructions asked by the defendant. We have hesitated, as heretofore intimated, not a little upon this question. If we thought that the instruction implied, as counsel for plaintiff in error contend, that greater freedom or familiarity of intercourse was proper between two unmarried persons of opposite sexes whenever each is under engagement of marriage to another party, we should unhesitatingly sustain the ruling of the district court. We cannot think that the instruction justly carries such an intimation. All we think that it implies is, that a gentleman may pay ordinary civilities to a young lady recently moving to his community, whom he supposes to be already engaged, without thereby laying the foundation for the imputation of a marriage contract between himself

2. Instructions, which might have been given, refusal of.

and the lady. In short, we think the instructions asked might properly have been given, and yet we are constrained to hold that the failure to give them was not under the circumstances such an error as justifies a reversal of the judgment.

In reference to the single ruling upon the testimony, the facts are, that the defendant called a witness, a young lady, who testified to conversations with the plaintiff which tended to support her claim of a marriage contract. It was evidently a surprise to the defendant, who had been led to suppose from the witness's statements to another party, that the plaintiff in her conversations with the witness had denied the existence of the contract; and he sought to impeach the witness, by proof that she had stated to such third party that the plaintiff had in conversations with her, substantially negatived the existence of any marriage contract with the defendant. The court declined to hear this testimony, holding apparently that as the witness was produced by the defendant, he must take her testimony for what it was worth, and could not thereafter impeach his own witness. That this is the general doctrine, counsel for plaintiff in error do not question; but they contend that this rule is not absolute and imperative, and that there are circumstances in which a party may fairly impeach his own witness. They cite in support thereof, the provision in the new common-law procedure of England, act of 1854, § 22, which reads as follows:

"A party producing a witness shall not be allowed to impeach his credit by general evidence of bad character, but he may in case the witness shall in the opinion of the judge prove adverse, contradict him by other evidence; or by leave of the judge, prove that he has made at other times a different statement, inconsistent with his present testimony. But before such last-mentioned proof can be given, the circumstances of the supposed statement, sufficient to designate the particular occasion, must be mentioned to the witness, and he must be asked whether or not he has made such statement."

We think that, independent of any special statutory provision, the matter is left largely within the discretion of the

trial court; that that court may, when it thinks the interests of justice require, permit a party to show that he is unexpectedly mistaken in the testimony of any witness; that he had good reason to expect other testimony, and what such other testimony would be. But being a matter so largely within the discretion of the trial court, we ought not to reverse a judgment on account of its ruling, unless it is very clear that the party complaining has sustained· substantial wrong thereby. Now in the case at bar, the testimony expected from the witness was a statement of the plaintiff in disavowal of any engagement; her testimony in fact was of statements of the plaintiff supporting such an engagement. As several witnesses were introduced who testified to statements of plaintiff substantially in disavowal of any engagement, and as this witness stood in no such relation to the plaintiff as would justify an expectation that to her alone rather than to others plaintiff would state the exact truth of her relationship to the defendant, we cannot think that the court abused its discretion in refusing to permit the defendant to impeach her testimony. If the witness was one who was supposed to be personally cognizant to any contract, or one whose relations to the plaintiff were such that she might be the special confidant of the plaintiff, perhaps the decision might be different, but under the circumstances we think there was no such abuse of discretion as justifies any interference with the judgment.

3. Impeachment of witness; rule; exception.

The final matter complained of is, that the verdict is against the evidence. Counsel contend that the large preponderance of the testimony was with the defendant, and that the trial court disregarded its duty as heretofore announced by this court, and practically declined to express any opinion as to the weight of the evidence. We must disagree with counsel upon both propositions; so far from thinking it clear that the preponderance of the testimony was with the defendant, to say the least there was a very doubtful question of fact. The plaintiff swore positively one way, the defendant the other. For aught we can perceive, one party was as fully entitled to

credence as the other. The plaintiff was supported by very strong testimony on the part of her mother, by the testimony of her step-father, by the general conduct of the defendant, and by the statements of defendant as disclosed by some of the witnesses. On the other hand, the defendant, admitting that there was at one time some talk of marriage between himself and plaintiff, but denying positively any marriage engagement, is supported almost alone by evidence of contradictory statements made by her. It is true, there were a number of these in which either indirectly or directly plaintiff disavowed any engagement with plaintiff, and talked of another engagement with a party in Illinois. In reference to this testimony, counsel for plaintiff well say that a young lady who is engaged to be married does not generally seek to advertise the fact, and that when teased or quizzed about the matter is very apt to answer by evasions and sometimes by denial. There is a maidenly modesty which seeks to keep such matters secret from the public gaze, and which often prompts the party, when persistently questioned, into positive denial. We cannot ignore the fact, and it serves to explain and interpret many of the denials testified to by witnesses, so that as we read the testimony through it seems to us there was fairly presented to the jury a doubtful question of fact, one upon which their verdict must necessarily be conclusive. This is all that we think the district court meant in announcing its decision. We do not understand that it is the duty of the trial court, where a doubtful question of fact exists, to disturb the verdict of the jury simply because

4. Verdict, when set aside—when not.

its judgment inclines the other way. The case of *Williams v. Townsend*, 15 Kas. 564, carries no such intimation. The jury are the triers of the fact, and while it is the duty of the district court to interfere, yet as stated in that case, it is only when they have manifestly mistaken the evidence, and where the verdict is manifestly erroneous. Where the question is absolutely doubtful, where some men would naturally come to one conclusion and others to the opposite, then the verdict of the jury is conclusive. They

are the triers of the fact, and although the judgment of the court may incline against the verdict of the jury, yet it ought not to interfere. Its duty of interference arises only when the jury have manifestly mistaken the testimony, when the verdict is manifestly against the evidence. Then, as we have repeatedly said, it is its duty to interfere; and if it sustains the verdict, we take it in this court, no matter how weak the testimony seems to be, as reduced to writing and incorporated in the record, that really as heard by the jury and the court and compared with the testimony on the other side and weighed by the apparent credibility of the respective witnesses, it was sufficient to sustain the verdict. Taking the whole record through, it does not seem to us that if we had occupied the position of trial judge we should have disturbed the verdict. It was a determination by the proper tribunal of what evidently was a doubtful question of fact. Because it was unnecessary, we have not considered the question raised by counsel as to the sufficiency of the record. We have assumed it to be sufficient; and except for the second question heretofore noticed, we should unhesitatingly, and with that we do hesitatingly, sustain the verdict and the judgment.

The judgment of the district court will be affirmed.

All the Justices concurring.