## THE STATE OF KANSAS V. FRANK MOON.
### No. 14,181.   (80 Pac. 597.)
#### SYLLABUS BY THE COURT.

1. GRAND LARCENY—*Preliminary Examination—Notice of Offense Charged.* A person charged with a felony must take notice from the evidence introduced by the state on the preliminary examination, as well as from the papers in the case, of the nature and character of the offense charged against him, and it is not necessary that such papers be prepared with the fullness of detail and technical accuracy of an information.

2. PRACTICE, SUPREME COURT—*Journal Entry Contradicted by Bill of Exceptions.* Entries upon the journal of the court showing a waiver of arraignment and plea of not guilty after an amendment of the information had been made will control a recitation in the bill of exceptions indicating that the amendment was made after plea.

3. EVIDENCE—*Cross-examination—Case Followed.* The rule anounced in the case of *The State v. Sorter,* 52 Kan. 531, 34 Pac. 1036, relating to the cross-examination of its own witnesses by the state in a criminal case, followed and applied.

4. PRACTICE, DISTRICT COURT—*Reopening Case—New Testimony.* The conduct of the district court in this action in opening the case after the evidence had closed, and admitting testimony by a witness who had been arrested for perjury and confined in jail on account of false swearing when placed on the witness-stand by the state in making its case in chief, approved.

Appeal from Barber district court; PRESTON B. GILLETT, judge. Opinion filed April 8, 1905. Affirmed.

*C. C. Coleman,* attorney-general, and *Noble & Tincher,* for The State.

*Samuel Griffin,* for appellant.

The opinion of the court was delivered by

BURCH, J.: Appellant was convicted of grand larceny. The warrant upon which he was arrested described the stolen property as a cow of a given age,

color, brand, and ownership. At the preliminary examination a number of witnesses were sworn and gave testimony on behalf of the state. The order of the justice binding appellant over was general in its terms, and made no specific reference to the charge contained in the warrant. The information added in some particulars to the description of the cow given in the warrant. Under a plea in abatement he claimed that he was informed against for a crime different from that for which he was bound over. The plea was overruled, and the same position is taken in this appeal.

The fallacy of appellant's argument lies in the unwarranted assumption that he was bound over for the larceny of a cow, without distinguishing characteristics beyond those exhibited by the warrant. The record of the justice contains no such limitation. On the other hand it discloses oral testimony as furnishing the basis of the magistrate's order. Of this testimony appellant was bound to take notice, and the county attorney had the right to utilize it in framing the information.

"The defendant must take notice, from the evidence introduced on the preliminary examination, as well as from the papers in the case, of the nature and character of the offense charged against him. *The State v. Smith,* 57 Kan. 673, 47 Pac. 541; *The State v. Bailey,* 32 id. 83, 3 Pac. 769." (*The State. v. Fields,* 70 Kan. 391, 78 Pac. 833, 834.)

The plea in abatement was tried upon the record, and instead of supporting the plea the record supports the information. This being true, it is not necessary to discuss the question how far an information may particularize a description contained in a warrant without changing it, when a defendant is bound over for the offense named in the warrant, but in the case of *The State v. Bailey, supra,* it was said:

"It is not necessary that the papers and proceedings on a preliminary examination should be technically regular and exact, like the papers and proceedings on the final trial. It is not necessary that the papers and

proceedings on a preliminary examination should set forth the offense in all its details and with perfect and exhaustive accuracy. For the purpose of authorizing a final trial and of requiring that the defendant should plead to the merits of the action, all that is necessary is that the defendant should be given a fair opportunity to know by a proffered preliminary examination the general character and outlines of the offense charged against him; and it is not necessary that all the details and technical averments required in an information should be set forth in the papers used on the preliminary examination." (Page 89.)

After the information had been filed it was amended. Certain statements in the bill of exceptions apparently conflict with the journal of the court upon the question of whether the amendment was made before the plea. Under such circumstances the recitals of the journal showing a waiver of arraignment and plea of not guilty after the amendment had been made will be accepted as true.

In the list of witnesses indorsed upon the information was the name of Burr Hinkle. Concerning his conduct the record contains some shocking disclosures. From the state's evidence it appears that on the morning of the trial the county attorney called Hinkle into his office and engaged him in conversation relating to his knowledge of the case. In the presence of the county attorney, an attorney assisting in the prosecution, two other gentlemen and a young woman employed in the county attorney's office he told of a conversation had with appellant before the larceny, in which appellant proposed that they take the cow in question together, saying it would be easy to do, and they could take her in partnership. Hinkle declined, and appellant then said he was going to get the cow, maybe put a "Diamond B" brand on her, and take her up to old man Moon's and she would make a good milch cow. Hinkle further stated that on the day preceding the trial he had talked with appellant in regard to what his testimony in the case would be, and appel-

lant told him to keep still about the previous conversation and say nothing about it. After leaving the county attorney's office he saw appellant and related his conversation with the state's attorneys. Appellant told him it made no difference what he said in the county attorney's office, and that he should say, when on the witness-stand, that he knew nothing about the original conversation. In the course of the forenoon, as he had done the previous day, the witness drank "malt" at "McCoy's" and "Bob's," the effects of which he still felt when placed on the witness-stand in the afternoon. He was a young laboring man, but twenty years old, without a home, without relatives in the community, and had never before been a witness in court.

When examined concerning appellant's proposition to him to steal the cow he denied that it had ever been made, and denied having any conversation with the defendant relating to the cow. Likewise he denied having a conversation with appellant on the day before in reference to what his testimony should be.

The jury was temporarily excused while the county attorney made a statement of the facts to the court, and upon their return the court, over appellant's objection, permitted a rigid cross-examination of the witness by the state, which included all that occurred at the county attorney's office in the morning. The witness gave an explanatory version of that transaction, and remained firm in his denials. After he was excused he was arrested for perjury and placed in jail. In the evening, after the evidence in the case had been closed, he sent for the attorneys for the state, and, without inducement or promise on their part, offered to go upon the witness-stand and tell the truth as he had told it to them before. Over the objection of the appellant the case was reopened, and the witness made a full and sweeping disclosure of all the shameful facts. The conduct of the county attorney and the dis-

trict court in these proceedings is denounced in very vigorous terms in the brief for appellant.

In an effort to make it appear that the law was quite impotent in this matter, and that all efforts to investigate so brazen an attempt to burlesque a criminal trial should have been smothered at once, it is said flat that the county attorney was not surprised. Conceding to that officer perfect imperturbability in the presence of Hinkle's conduct, it is still quite plain that he was entrapped, that he had the right to anticipate different testimony, and that the witness had become decidedly hostile; and these circumstances are sufficient to bring the case within the rule relating to the cross-examination of its own witnesses by the state heretofore announced by this court. In the case of *The State v. Sorter,* 52 Kan. 531, 538, 34 Pac. 1036, the following language was used:

"The permission granted counsel for the state to cross-examine one of their own witnesses is a matter of complaint. . . . As a general rule, a party cannot impeach his own witness, nor interrogate him with a view to affect his credibility merely. Neither can he introduce other evidence for that purpose. But while he may not impeach him, he is not conclusively bound by the statements which he may make. And where a party has been entrapped or deceived by an artful or hostile witness, he may examine the witness as to contrary declarations, and may, in the discretion of the court, be allowed to show what such contrary declarations were. In *Johnson v. Leggett,* 28 Kan. 605, it was held that 'the matter is left largely within the discretion of the trial court; that that court may, when it thinks the interests of justice require, permit a party to show that he is unexpectedly mistaken in the testimony of any witness; that he had good reason to expect other testimony, and what such other testimony would be.' "

(See, also, *Selover v. Bryant,* 54 Minn. 434, 56 N. W. 58, 21 L. R. A. 418, 40 Am. St. Rep. 349, and note, where numerous authorities sustaining this rule are collated.)

The rule relating to the right of the district court, in furtherance of justice, to open a case for additional testimony is elementary in the law, and requires no fortification by authority.

In cases of this character, as in all others, the judge of the district court sits as an impartial arbiter between the state and the accused. The conduct of the witness is displayed in his presence. He can best determine whether it savors of mendacity and treachery and warrants searching cross-examination, and he can best estimate the necessities of the situation with reference to a subsequent reopening of the case. The law trusts him to do this, and nothing but a clear overstepping of the limits of judicial propriety could induce this court to interfere with his management of a proceeding of such delicacy and gravity.

Reverence for the majesty and supremacy of the law, the obligation of the individual to organized society, and the sense of responsibility and accountability to the Supreme Power of the Universe all impregnate the oath of a witness in court. Oaths are primary and fundamental safeguards in the quest for truth in courts of justice, and should be attended by all their ancient sanctity. Perjury is the gangrene of judicial proceedings. It is believed by observant and thoughtful lawyers to be increasing at an alarming rate (address of J. J. McCarty, president of the Iowa State Bar Association, 35 Am. Law Rev. 684), and prompt and diligent efforts should always be made to cleanse the administration of the law of its pernicious and polluting presence. Therefore, under the facts disclosed, the county attorney is to be commended for his quick arrest and incarceration of the witness Hinkle.

Hinkle was taken into custody without any expectation of using him as a witness again, and the case was closed without doing so. Without proof the law will not tolerate an inference that he returned to the wit-

ness-stand through any improper inducement or official misconduct on the part of the state's attorneys, and there is no hint of any such proof in the record. Doubtless detention in jail materially helped to clarify his benighted mental and moral vision, but it did not destroy his competency as a witness. It only affected his credibility, and all the rueful facts of his degradation were confessed to the jury. Facts were disclosed tending to show that besides being sinful he was probably sinned against by persons interested in the defense. His weakness and ignorance were probably imposed upon, and despite his false swearing the jury had the right to believe from his evidence that the defendant had proposed to steal the property in question, had announced his intention to consummate the crime, and had on two occasions attempted to frame perjured testimony in order to thwart conviction. The conduct of the court in opening the case is fully approved.

Certain instructions complained of were applicable to the evidence and correctly stated the law. The oral request of the appellant that the court "instruct the jury as to the law of identity" was of no legal effect as a request for an instruction. The instructions given fulfilled all the requirements of the statute.

The judgment of the district court is affirmed.

All the Justices concurring.