No. 20,089.

GEORGE NUZUM, *Appellee*, v. JOE SPRINGER and WILLIAM OGDEN, Intervenor, *Appellants*.

SYLLABUS BY THE COURT.

1. ATTACHMENT—*Land Allotted to Iowa Indian—Patented to His Heirs—Subject to Attachment by Heir's Creditor.* The allotment of the lands in the reservation of the Iowa Indians in Nebraska and Kansas was made under the act of congress approved January 26, 1887, and was subject to the restrictions therein imposed as to taxation, alienation or forced sale, and a deed issued to the heirs of an allottee of that tribe before the trust period had expired in pursuance of the provisions of an act approved June 21, 1906 (Part 1, 34 U. S. Stat. at Large, ch. 3504, p. 349), operated to end the trust period and to remove all restrictions imposed in the allotment act, and the land so patented was thereafter subject to taxation, sale, attachment and execution to the same extent as lands owned by others.

2. TRIAL—*Impeaching Party's Own Witness.* Ordinarily a party may not impeach his own witness, but in the interest of truth and justice it may sometimes be done, and when it is permissible is largely within the discretion of the trial court.

Appeal from Brown district court; WILLIAM I. STUART, judge. Opinion filed April 8, 1916. Affirmed.

*S. L. Ryan,* and *W. F. Means,* both of Hiawatha, for the appellants.

*S. F. Newlon,* of Hiawatha, and *S. M. Brewster,* of Topeka, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was an attachment proceeding which involved the question whether a certain tract of land that had been allotted to an Indian of the Iowa tribe and subsequently patented to an heir was subject to an attachment, and whether a certain deed was delivered prior to the levy of the attachment. The land had been allotted to Min-Cath-Way, a member of the Iowa tribe, under an act of congress which provided that it should be held by the government in trust for a period of twenty-five years, after which it should be conveyed by patent in fee simple to the allottee or his heirs. The allotment

appears to have been made in 1891, and before the expiration of the trust period Min-Cath-Way died, leaving as his heirs his wife, Catherine, and a daughter. Catherine also died before the trust period ended, and left as her heirs the daughter of the allottee and Joseph Springer, who was the son of Catherine by a former husband, and inherited a share of the land from his mother. After her death, and on November 21, 1910, the secretary of the interior issued a patent to the tract in question, giving an interest to Joseph Springer, who then resided in Oklahoma. Prior to that time Springer had executed a number of promissory notes in favor of George Nuzum, and to recover on these Nuzum brought an action against Springer on January 6, 1911, and caused an attachment to be levied on the land as the property of Springer. William Ogden interpleaded in the action and alleged that he was the owner of the land, Springer having executed a deed to him on the day of the attachment but before the time it was levied upon the land. Springer filed a motion in the case to dissolve the attachment, but based it on the ground that he had conveyed the land and had no interest in it. At the trial a question arose as to whether the levy of attachment was prior to the delivery of the deed from Springer to Ogden. It appears that the deed was signed on the morning of January 6, 1911, and that Ogden then turned over to him two checks as payment for the land. Ogden testified that the deed was then formally delivered to him. On the other hand, testimony was offered to the effect that the deed was to be delivered when the money was paid upon the checks and that Springer accompanied Ogden to Kansas City for the purpose of having the checks cashed. The checks were in the possession of Ogden in Kansas City, and on the morning of January 7, 1911, they were presented to a bank in Kansas City, payment was made, and the deed was then delivered. The trial court found and adjudged that Springer had an interest in the land subject to attachment, and that the attachment was levied before the Ogden deed was delivered.

On this appeal it is contended that the land was not subject to attachment as it had been allotted under an act which prohibited the forced sale of the land for debt during the trust period of twenty-five years, which had not expired when the

attachment was levied. (24 U. S. Stat. at Large, ch. 47, p. 367.) Reliance is also placed upon an amendment to the Dawes act, which is to the effect that lands shall not be levied on to be taken in satisfaction of a debt contracted prior to the issuance of the patent. (Part 1, 34 U. S. Stat. at Large, ch. 2348, p. 182.) As we have seen, the land in controversy was not allotted under the Dawes act, but the allotment was made under the special act applicable to the Sac and Fox and Iowa reservations in Nebraska and Kansas. (24 U. S. Stat. at Large, ch. 47, p. 367.) That act provides that when the allotment is made a trust patent shall be issued to the allottee and the United States will hold the land in trust for the sole use and benefit of the allottee or his heirs for the period of twenty-five years, and at the end of the trust period shall convey the same to the Indian or his heirs by a patent in fee simple, discharged of the trust, and that during the trust no conveyance or contract to convey shall be valid "and such lands, during such time, shall not be subject to taxation, alienation, or forced sale, under execution or otherwise." Under that act the trust period may be ended by the issuance of a patent in fee simple conveying the land, discharged of the trust. The trust power was ended and the lands patented, not under the Dawes act, but in virtue of a special provision in an act of congress approved June 1, 1906, which provided:

"That the Secretary of the Interior be, and he is hereby, authorized, in his discretion, to issue patents in fee simple to the members of the Sac and Fox of Missouri and Iowa tribes of Indians for the lands heretofore allotted them in Kansas and Nebraska; and the issuance of such patents shall operate to remove all restrictions as to sale, taxation and incumbrance of the lands so patented." (Part 1, 34 U. S. Stat. at Large, ch. 3504, p. 349.)

The patent issued under this provision conveyed the land free from any prior conveyance or contract to convey, and at the same time it also conveyed it to the grantee free from the restrictions imposed in the act of allotment. The secretary of the interior was authorized to ascertain the heirs of the deceased allottee, and if satisfied of their ability to manage their own affairs he was empowered to issue a patent in fee simple to them. (Part 1, 35 U. S. Stat. at Large, ch. 216, p. 444.) When the patent in fee simple was issued, the land was dis-

charged of the trust as effectually as if the twenty-five-year period had expired, and thereafter it was subject to alienation, taxation or forced sale under execution for the debts of the owner. Congress might have provided, as it did in the case of some other Indians, that the land should never be taken for debts contracted prior to the issuance of the patent, but no such restriction was placed in the allotment act, nor in the one authorizing the issuance of the patent and the removal of the restrictions. The restrictions of the Dawes act have no application to the Iowa tribe of Indians or to the conveyance of their lands. Springer, therefore, was at liberty to convey the land at the time the deed was signed on January 6, 1911, and his land was likewise subject to attachment in satisfaction of his debts at that time.

The only question remaining arises on a ruling admitting testimony. The plaintiff took the deposition of Springer in Oklahoma, and while some of the testimony given supports the theory of the plaintiff that the deed was delivered in Kansas City, other of his answers tended to show that Springer accepted the checks of Ogden as payment for the land in Oklahoma and at the same time delivered the deed to Ogden. While testifying he was shown an affidavit previously made by himself, to the effect that he had refused to accept the checks or to deliver the deed until the checks were cashed, and that he kept possession of the deed until he and Ogden arrived in Kansas City and the money was paid on the checks at a bank in that city. His explanation was that he was frequently under the influence of intoxicating liquor and that he had no recollection of making the statements contained in the affidavit. It is contended that by the admission of the statement the plaintiff who took Springer's deposition was allowed to contradict or impeach his witness. The general rule is that a party may not impeach his own witness, but in the interest of truth and justice it may sometimes be done, and when a departure from this general rule is justified is largely within the discretion of the court. (*Johnson v. Leggett*, 28 Kan. 590; *The State v. Sorter*, 52 Kan. 531, 34 Pac. 1036; *The State v. Moon*, 71 Kan. 349, 80 Pac. 597; *Tacoma Ry. & Power Co. v. Hays*, 110 Fed. 496.) The affidavit so identified was attached to and included in the deposition, and this appears to have been done over the ob-

jection of the defendants. It does not appear from the defendants' abstract that the court made any ruling on the objection that was made when the deposition was taken, and so far as their abstract is concerned the testimony would appear to have been received without calling it to the attention of the court or obtaining a ruling on the objection. However, in the counter-abstract of the plaintiff it is stated that an objection was made to the admission of the affidavit by the defendants and that it was sustained by the court. We must therefore assume that the testimony was not received, and in any view no error is shown.

The judgment is affirmed.