# STATE v. JAMES B. PENNINGTON AND ANOTHER.[1]

May 20, 1921.

No. 22,207.

**Homicide — one verdict sustained — one verdict not sustained.**

1. The evidence sustains the verdict finding the defendant Rauslange guilty of murder in the second degree, but it is insufficient to sustain the verdict against the defendant Pennington.

**Admissibility of evidence.**

2. No error occurred in the admission or exclusion of evidence of which defendant found guilty is in position to complain.

**Corroboration of accomplice — question not reviewable.**

3. Defendants were not entitled to an instruction that Stoppler, jointly indicted with them but a witness for the state, was an accomplice. And since there was no request for an instruction that, should Stoppler be found an accomplice, there must be an acquittal for lack of corroborating testimony, the question of the presence or absence of such testimony is not here for review.

**Charge to jury.**

4. The instructions of the court were full, clear and fair both to the state and to the defendants.

James B. Pennington and Peter Rauslange were indicted by the grand jury of Anoka county charged with the crime of murder in the first degree, tried in the district court for that county before Giddings, J., and a jury and convicted of murder in the second degree. From an order denying their motion for a new trial, defendants took separate appeals. Affirmed as to defendant Rauslange. Reversed as to defendant Pennington.

*Brady, Robertson & Bonner*, for appellants.

*Clifford L. Hilton*, Attorney General, *Albert F. Pratt, James E. Markham*, Assistant Attorneys General, and *Will A. Blanchard*, County Attorney, for respondent.

[1]Reported in 182 N. W. 962.

HOLT, J.

Early on October 25, 1918, a man was found dead at a haystack with-in less than a mile from the easterly city limits of Anoka. The haystack was about 70 feet north of a road running east and west called Main street road. The ground indicated a struggle and the crushed skull clearly proved that some one had inflicted a fatal wound. J. B. Pennington, Peter Rauslange and Lorenz Stoppler were indicted, and the two first named, tried together, were convicted of murder in the second degree and sentenced. Each appeals from the order denying his separate motion for a new trial.

The errors assigned are by appellants discussed under the heads: (1) the evidence is insufficient to support the verdict; (2) errors in the admission of prejudicial testimony; and (3) errors in the charge.

Who the dead man was has never been ascertained. That his life was feloniously taken is conceded. The disputed proposition is defendants' connection with the crime. Pennington, 52 years of age, owned a sedan car which he used as a taxicab in Minneapolis. Rauslange, 46 years old, who will be referred to hereafter as Miller, the name he generally was known by, worked around saloons, and usually roomed over them. The two defendants became acquainted when both were serving sentences at the Minneapolis workhouse for liquor law violations. Thereafter they frequently associated, taking women out for joy rides, and to some extent drinking together.

The theory of the state was that Miller met Stoppler in the afternoon on October 24, 1918, and, while drinking with him, concluded that he had some money which it was worth while to obtain, and, when the company of some girls suggested itself, Miller conceived the plan to take a taxicab ride out in the country, ostensibly to gratify Stoppler's desire, but in reality for the purpose of robbing him; that to that end Pennington was engaged to take them out to Bertha, Minnesota, a place some 30 miles north of Long Prairie, the home of one Edith with whom Miller associated; that Miller told Stoppler that the place was but 18 miles out in the country; that the party left Minneapolis at about 11 o'clock in the evening, and on the road to Anoka picked up a confederate of the defendants, the man killed; that, when Stoppler became dead to his surroundings, he was robbed of his watch and $320 in bills which

he carried concealed upon his person, and that the confederate, the dead man, and Miller became involved in a dispute over the spoils, and in the altercation Miller gave the blows that caused the death.

It is not our purpose to give a resume of the evidence, but only to state the more conspicuous circumstances which tend to connect defendants with the crime.

From the testimony of the physician who conducted the post mortem the jury could find that the crime was committed shortly after 2 o'clock in the morning of the twenty-fifth; that, at 1:43 a. m. that day, defendants inquired the way to Bertha of one Hoyt, a farmer, living 5½ miles south of Anoka; that not far from that time an automobile stopped a few minutes near the haystack mentioned and then proceeded rapidly toward Anoka; that at 2:35 a. m. defendants stopped at the mill in Anoka and inquired the road to Bertha; that they exhibited nervousness when they arrived at the home of Edith's sister, near Bertha; that when arrested at Long Prairie, after being informed that the chief of police at Anoka had been killed, Miller told Stoppler it was not the chief of police, and that defendants then cautioned Stoppler to stick to his story that he had been robbed before they started on the trip, for, if he did, they would be freed at Anoka and he would get his money back. Also, that after the preliminary hearing Miller told Stoppler that the dead man was trying to kill him, Stoppler, and that he, Miller, would not let him; that the dead man had got $120 of Stoppler's money; that in the fracas the door of the car was slammed on Miller's hand, and then he hit the man twice, but did not expect him to die; that the man was a crook and safe blower; that the altercation took place outside the car, and that Pennington was not out of the car at all.

Stoppler also testified that afterwards Miller said they just took him, Stoppler, out to rob him. In corroboration of the robbery there was evidence that Miller had no money when they started, but had money to spend when they got to St. Cloud; that he did not carry a watch, but when asked the correct time at the home of Edith's sister he had one, and that in a little pocket inside the coat pocket of the dead man were found $136 in bills, one of which was a one hundred dollar bill, and one a twenty dollar bill. Stoppler testified that the money of which he was relieved consisted of two one-hundred, two fifty, and one

twenty-dollar bills. It is readily seen that, if the jury accepted Stoppler's story of the robbery and of Miller'c confession as true, the verdict as to the latter is justified, even though there were many circumstances that might seem to discredit both. The jury could find a design to effect death from the force and brutal·manner in which the blows were evidently struck by a deadly bludgeon or weapon. Rosemond v. State, 86 Ark. 160, 110 N. W. 229.

But as to Pennington the situation is different. The only thing connecting him with any admission of guilt is that, at Long Prairie, after their arrest, he heard Miller tell Stoppler to keep quiet about his being robbed on the trip and they would all be freed, and also he, Pennington, then told Stoppler the same thing. The admissions by Miller, after the preliminary hearing of his connection with the killing, were not made in the presence of Pennington, and, as correctly ruled by the learned trial court, could not be made use of against him. Nor were these admissions of Miller made by a coconspirator under such circumstances as to be admissible against Pennington, for they were made long after the commission of the crime. But, even were it otherwise, Miller's statements exculpate Pennington. Taking the whole of the state's case, including all of Stoppler's testimony, we think no jury justified in connecting Pennington with the killing other than as an accessory after the fact, in that he aided Miller to escape. But as such he could be indicted and tried only under section 8479, G. S. 1913, as the court correctly charged the jury.

That there existed a conspiracy or tacit understanding between Pennington and Miller to harm or take the life of the dead man, is negatived by Miller's statement of the affair to Stoppler, and is wholly out of harmony with the theory of the prosecution, which was that the one killed was a confederate, taken along to help rob Stoppler. Miller's confession contains no suggestion that Pennington, either directly or indirectly, induced, encouraged, or counseled Miller to strike their companion. There is no foundation for a claim that defendants had conspired to either rob or harm their confederate, the dead man. Pennington made no attempt to obtain any money from the victim. This case is readily distinguishable from State v. Shea, 148 Minn. 368, 182 N. W. 445, where the evidence was clear that Shea, after knowledge that Reden-

baugh had slain Mrs. Dunn for an agreed reward, eagerly sought and secured a share thereof. This was persuasive proof that he aided and abetted the crime committed in his presence. The jury were properly instructed touching every issue bearing upon the guilt or innocence of defendant Pennington, but a careful examination of the record leads to the conclusion that the evidence wholly fails to prove him guilty of the crime of which he stands convicted.

It will therefore not be necessary to refer to other assignments of error relating to his appeal, except to say that no error was committed in showing the intimacy existing between the two defendants, and that the story of the Larson deal, so called, was properly stricken from the record. If any evidence improperly crept in from the testimony of the shorthand reporter, who was present and took notes when defendants were questioned by the county attorney soon after their arrest, the error was clearly waived by defendants' attorney. We find no error in the rulings of the court as to which Miller may justly complain.

It is claimed that there was no sufficient corroboration of Stoppler, an accomplice. There is no merit in this claim. The court submitted the question of Stoppler's complicity to the jury under proper instructions, and the evidence amply warrants the conclusion that he was not an accomplice. The jury could well find that from drink or drug Stoppler became so dead to the world before the party left Minneapolis that he never realized that a fourth man joined them. There was no request or suggestion for an instruction to the effect that, if Stoppler was found to be an accomplice, there must be an acquittal because of the lack of sufficient corroborative evidence. Hence the question of the sufficiency of the corroboration is not for review.

The charge of the court is said to set forth too prominently and argumentatively the claims of the state. The criticism appears to us unfounded. The learned trial court clearly, amply and impartially stated the issues and the applicable rules of law to the jury, and the contentions of defendants were distinctly brought to the attention of that body. Exception is taken to that part of the charge which refers to the fact that defendants had testified, and stating that, in weighing their testimony, the jury were to apply the same rules that had been given for weighing the testimony of witnesses generally. This is accurate enough,

149 M.—8.

but the reference to defendants might with more propriety have been omitted.

The result of a careful examination of the whole record is that there is sufficient evidence to support the conviction of defendant Peter Rauslange alias Peter Miller, and that no error was made in any ruling or in the charge of which he may justly complain, but that as to defendant Pennington the evidence is insufficient to sustain the conviction.

Therefore the order is affirmed on the appeal of Peter Rauslange, and reversed on the appeal of J. B. Pennington and a new trial granted to him. And the warden of the state prison at Stillwater is hereby directed to surrender said Pennington to the sheriff of Anoka county, on his application, who will return him to that county for trial.