GEORGE H. SELOVER *et al. vs.* JOHN W. BRYANT, Administrator, Etc.

Argued June 29, 1893.  Affirmed Aug. 21, 1893.

**Previous Inconsistent Statements to Contradict Your Own Witness.**
A party who has called a witness in his own behalf, and who is surprised by his adverse testimony, may, in the discretion of the court, be allowed to show, after proper preliminary proof, that he had previously made statements contrary to his testimony.  GILFILLAN, C. J., dissenting.

**Attorney's Fees Enhanced by the Value Involved.**
The importance of a cause to a client is worthy of consideration in determining the value of the professional services of the attorney employed therein.

**Insufficient Assignment of Error.**
An assignment of error that the court erred in refusing a motion for a new trial is too general.

Appeal by defendant, John W. Bryant, from an order of the District Court of Hennepin County, *C. B. Elliott,* J., made March 1, 1893, denying his motion for a new trial.

The plaintiffs, George H. Selover and Charles D. Gould, were attorneys at law practicing at Minneapolis.  Between July 15, and September 23, 1892, they rendered professional services for Lucia A. Bryant.  She employed them to bring suit against her husband, George M. Bryant, for divorce, and for a share of his property.  They did so, and conducted the case to an amicable settlement on the latter date.  They brought this action on October 25, 1892, to recover for their services.  They alleged that on the settlement the husband agreed with his wife to pay them their reasonable fees and charges in the divorce suit.  That the value of their services was $500, of which $90 only had been paid.  They asked judgment for the residue.  Defendant denied ·the agreement to pay his wife's attorneys, and denied that their services were worth more than the $90 she had paid.  On the trial November 17, 1892, plaintiffs called Lucia A. Bryant as a witness and asked her as to the agreement of her husband to pay her attorneys.  She testified that she did not hear anything said on the settlement about the fees of her attorneys; that her husband did not agree with her to pay them.  She further testified that she did not state to Mr.

Gould, the day before, that her husband had so agreed. Plaintiffs then called Mr. Gould and offered to prove by him that she did so state to him on the previous day. Defendant objected, but the objection was overruled. Defendants excepted, and the witness so testified. The Judge charged the jury that in arriving at the value of plaintiff's services, their value to Mrs. Bryant will be one element that you will be entitled to consider. To this charge defendant excepted. The jury found a verdict for plaintiffs and assessed their damages at $345. Defendant died January 23, 1893, and John W. Bryant, the administrator of his estate, was substituted as defendant in his stead. He moved for a new trial, and, being denied, appeals.

*George R. Robinson,* for appellant.

The plaintiffs, knowing that the wife could not testify against her husband without his consent, (1878 G. S. ch. 73, § 10,) placed her upon the stand, and, after having her testimony, they were allowed, not only to contradict and discredit their own witness, but to show, by the testimony of other witnesses, her alleged statements against her husband made when not under oath. 1 Greenleaf, Ev. § 442; *Commonwealth* v. *Welsh,* 4 Gray, 535; 2 Phil. Ev. 988, note 604; *Lawrence* v. *Barker,* 5 Wend. 301; *Thompson* v. *Blanchard,* 4 N. Y. 303; *People* v. *Safford,* 5 Denio, 117; Starkie, Ev. 251; *Fulton Bank* v. *Stafford,* 2 Wend. 483; *Brown* v. *Bellows,* 4 Pick. 178; *Whitaker* v. *Salisbury,* 15 Pick. 534.

In determining the value of plaintiffs' services the jury were allowed to consider the value to Mrs. Bryant. The instruction was calculated to mislead the jury, and was permitting and instructing them that they might find, not the reasonable value of so much professional skill, responsibility and service, but what the value, as gauged by the result, was to Mrs. Bryant. The only true criterion, as we deem it, would have been, the amount which an attorney at law would usually charge for such services.

*Boardman & Boutelle,* for respondents.

Plaintiffs had the right to show contradictory statements of their own witness. This is sustained by the great weight of authority in cases where the witness has been called, upon the strength of his prior statements, and upon the supposition that he will tes-

tify in accordance therewith, and when upon the stand he surprises the party calling him, by testifying directly to the contrary, and in the interest of the adverse party. 1 Greenleaf, Ev. § 444; 1 Thompson, Trials, § 512; Starkie on Ev. (10th Am. Ed.) 245.

The same rule has been incorporated in the Common-Law Procedure Act of England, 17 and 18 Vic. ch. 12, § 22. "A party producing a witness shall not be allowed to impeach his credit by general evidence of bad character; but he may, in case the witness shall, in the opinion of the Judge, prove adverse, contradict him by other evidence, or, by leave of the Judge, prove that he has made at other times a statement inconsistent with his present testimony." This embodies the law as it exists here. *Bank* v. *Davis*, 6 Watts & S. 285; *Cowden* v. *Reynolds*, 12 Serg. & R. 281; *Harden* v. *Hayes*, 9 Pa. St. 151; *Moore* v. *Chicago, St. L., etc., R. Co.*, 59 Miss. 243; *Dunlap* v. *Richardson*, 63 Miss. 447; 13 Am. Law Review, 261; *Smith* v. *Briscoe*, 65 Md. 561; *Craig* v. *Grant*, 6 Mich. 447; *Johnson* v. *Leggett*, 28 Kan. 590; *St. Louis, etc., Ry. Co.* v. *Weaver*, 35 Kan. 412.

The instruction to the jury was necessary to make clear the correct *status* of the case, to wit: that they were to find the value of the services, as if the issue were between plaintiffs and Mrs. Bryant, and whatever sum was thus found, Bryant was to pay, in case they found the special agreement, claimed.

DICKINSON, J. The plaintiffs, as attorneys at law, prosecuted an action for a divorce against the defendant and in behalf of his wife. The action was settled between the parties, and dismissed. The plaintiffs prosecute this action to recover for their legal services in behalf of the defendant's wife, claiming that in the settlement of the former suit the defendant agreed with his wife to pay for such services. The defendant denies that agreement. After a verdict for the plaintiffs upon that issue, and the refusal to grant a new trial, the defendant appealed.

The plaintiffs called the defendant's wife as a witness in their behalf. Her testimony tended to refute the claim of the plaintiffs as to the alleged agreement. After a preliminary examination of the witness, as to former contradictory statements made by her, the plaintiffs were allowed to show that she had made a statement of the fact to one of the plaintiffs materially different from her

testimony. The case justified the conclusion of the court that the plaintiffs were surprised by the adverse testimony. It is one of the controverted questions in the law of evidence whether a party calling a witness, and who is surprised by his adverse testimony, may be permitted to show that he had made previous statements contrary to his testimony. A learned writer has said that the weight of authority seems to be in favor of admitting such proof. 1 Greenl. Ev. § 444. We are in doubt whether the weight of authority is not the other way; but we feel confident that well-recognized reasons and principles of the law of evidence support the proposition that, at least in the discretion of the trial court, such evidence is admissible. It is perfectly well settled, and upon satisfactory reasons, that if the defendant had called the witness to the stand, and she had testified as she did as to the fact in issue, the plaintiffs, after proper preliminary proof, would have been allowed to show by other witnesses that she had made statements contrary to her testimony. This rule, now everywhere recognized, rests upon the obvious propriety and necessity of informing the jury of circumstances so directly bearing upon the credibility of the witness and the value of his testimony as do contradictory statements by him of the controverted facts concerning which he testifies, and which the jury must determine. But this controlling reason for allowing such discrediting evidence exists, and with precisely the same force, whether the witness has been called to the stand by the opposite party or by the party who offers the impeaching proof; and if the witness may be thus discredited by the party who did not call him, but may not be discredited by the party who called him, the reason must be that by calling the witness to the stand the party holds him forth as being worthy of credit, and hence he should not be allowed afterwards to impeach his credibility. And this is the proposition which, in one form or another, is generally assigned as the reason of the rule disallowing such impeachment wherever that rule has prevailed. This rule and the reason for it has been so generally accepted and applied with reference to an impeachment by a party of the general reputation of a witness whom he has called that it is perhaps not now to be questioned; but as respects the particular discrediting proof which we are considering, the practice has been less uniform,

and the excluding of the discrediting proof has been more strenuously opposed by the best authorities. The reason upon which it rests is, we think, plainly fallacious. The fault in the reason lies in the premise that, by calling the witness, the party presents him as being worthy of credit, or, in any sense, vouches for his truthfulness. In some sense and measure this may be true; but laying aside the subject of general impeachment, and directing our attention only to the question of allowing proof of statements contrary to the testimony by which a party is surprised at the trial, the above-stated reason is of no controlling force, except as it includes and implies such a degree of responsibility for the credit of the witness—such a personal voucher of his truthfulness— that it would be bad faith, double dealing, trifling with the court, or something akin thereto, for the party to afterwards throw discredit upon his testimony. The premise is not tenable. A party is not to be held to have assumed any such responsibility as to the truthfulness of a witness, and ordinarily, at least, there can be no imputation of bad faith, or anything like it, when, the party being surprised by his own witness testifying directly in favor of the adverse party, he offers to show his preliminary statements to the contrary, as impeaching his credibility. One has not all the world from which to choose the witnesses by whose testimony he must prove his case. He has not the freedom of choice that one has in the selection of an agent. He can only call those who are supposed to know the facts in issue. He is entitled to have their testimony placed before the jury, not as the statements of his agents or representatives by which he is to be concluded, but as the testimony of witnesses whose credibility he cannot be expected to vouch for, but which the jury are to determine. It is everywhere admitted that a party whose witness testifies against him is not concluded thereby. He may prove the fact to be contrary to such testimony, although that does discredit a witness whom he has called. We deny that, by calling a witness to the stand, a party becomes responsible for his credibility in any such sense that he is absolutely precluded, when surprised by adverse testimony, from showing that the witness had made statements of the facts contrary to his testimony. It is at least within the discretion of the court to allow this.

It has been suggested that this affords an opportunity to fraudulently get before the jury the unsworn statement of a witness which the jury may accept as evidence of the fact. But the same objection may be urged in opposition to allowing a party to discredit in this way a witness called by the adverse party; yet this is always allowed. The direct, certain, and obvious effect of such evidence, in enabling the jury to rightly weigh the testimony, should prevail over the far more remote, improbable, and collateral considerations that opportunity may be thus afforded to a dishonest party to collude with a dishonest witness to make a false statement of facts, which the witness would not swear to, in order that, after the witness shall have testified to the truth, the false unsworn statement to the contrary may be shown. There are so many contingencies in the way of such barely possible results that the remote possibility is not of much weight, as against the plain practical considerations opposed to it. While, perhaps, the weight of authority is in favor of excluding such evidence, we feel that, in holding it to be within the discretion of the court to receive it, we are justified, not only by reason, but by a sufficient array of authority. In the English courts both views have been sanctioned. A strong presentation of the rule allowing such proof was made by Lord Chief Justice Denman in *Wright* v. *Beckett*, 1 Moody & R. 414. This view is preferred in Starkie, Ev. (Sharswood's Ed.) 245; 2 Phil. Ev. marg. pp. 985–995; 1 Greenl. Ev. 444; *Cowden* v. *Reynolds*, 12 Serg. & R. 281, 283; *Bank of the Northern Liberties* v. *Davis*, 6 Watts & S. 285; *Smith* v. *Briscoe*, 65 Md. 561, (5 Atl. Rep. 334;) *Campbell* v. *State*, 23 Ala. 44, 76; *Hemingway* v. *Garth*, 51 Ala. 530; *Moore* v. *Chicago, St. L. & N. O. Railroad Co.*, 59 Miss. 243; and see *Johnson* v. *Leggett*, 28 Kan. 590, 606. See, also, a discussion of this subject in 11 Am. Law Rev. 261. It may be added, as indicating what it has been considered the rule ought to be, that in England and in several of our states statutes have been enacted allowing such proof to be made. Our conclusion on this point is that the court did not err in receiving the evidence.

The only other assignments of error which we deem worthy of specific mention are those relating to the charge of the court that the value of the services (of the plaintiffs) "to Mrs. Bryant" should be considered by the jury. There was no error in this. The court

did not say that that consideration alone should be taken as the measure of value. The value of the services of an attorney is necessarily to be determined by many considerations besides the mere time visibly employed in the conduct of a suit. Among other things, the importance and results of the case are to be considered. The importance of the cause to the client affords to some extent a measure of the skill, care, responsibility, anxiety, and effort demanded of and to be borne by the attorney, and should not be disregarded in their bearing upon the question of the value of such services. *Eggleston* v. *Boardman*, 37 Mich. 14.

The seventh assignment of error—that the court erred in overruling the motion for a new trial—is too general to be available.

Order affirmed.

GILFILLAN, C. J. On the point of the admissibility of the evidence of contradictory statements made by the witness Bryant, I dissent.

(Opinion published 56 N. W. Rep. 58.)