STATE v. ORRIN SHEA, ALIAS JOHN DOYLE.[1]

April 1, 1921.

No. 22,254.

**Question of fact.**

1. The evidence made it a question of fact whether the defendant, indicted with several others, was present at the killing for which he was indicted and which was directly accomplished by one of his codefendants.

**Impeachment of its own witness by the state.**

2. The prosecution, surprised by the adverse answers of an unwilling witness called for the state, may be permitted by the trial court in a proper case and in the exercise of a sound discretion to cross-examine him to refresh his recollection or to get a possible correction or change of his testimony, and, failing in this, may be permitted to impeach him by showing contradictory statements.

**Evidence.**

3. The evidence did not require a finding that the defendant entered into an arrangement with certain of his codefendants to commit a burglary; that the killing for which he was indicted was agreed upon by his codefendants alone; that it was not in furtherance of the burglary, and that he was not present aiding or abetting; and it sustains

[1]Reported in 182 N. W. 445.

a finding that he entered into an arrangement with certain of his co-defendants for the killing, and was present aiding and abetting.

**Charge to jury—refusal of request.**

4. The court correctly stated to the jury the facts which must exist to justify the conviction of the defendant, and it did not err in refusing a requested instruction making the defendant's guilt dependent upon his intent or purpose when he went to the place of killing, irrespective of his intent or purpose when the killing occurred, or his aiding or abetting therein.

Defendant and others were indicted by the grand jury of Ramsey county charged with the crime of murder in the first degree, and defendant was tried separately in the district court for that county before Brill, J., who when the state rested denied defendant's motion to dismiss, and a jury, and found guilty as charged in the indictment. From an order denying his motion for a new trial, defendant appealed. Affirmed.

*James Manahan,* for appellant.

*Clifford L. Hilton,* Attorney General, *James E. Markham,* Assistant Attorney General, *Richard D. O'Brien,* County Attorney, and *Harry H. Peterson,* Assistant County Attorney, for respondent.

DIBELL, J.

The defendant Orrin Shea, indicted as John Doyle, was convicted of murder in the first degree for the killing of Alice M. Dunn, and appeals. Several others were indicted with him. An appeal involving the conviction of one of the defendants is reported in 140 Minn. 308, 168 N. W. 2.

One question is whether the defendant Shea was the third man, sometimes referred to in the evidence as John Doyle, present at the killing with the defendants Redenbaugh and McCool; another, whether the court erred in permitting the state to cross-examine and impeach Redenbaugh, its witness, upon the identity of Doyle and Shea; another, whether the evidence sustains a finding that Shea, if the third man, was concerned in the killing so as to be guilty of murder, or was only guilty of burglary; and another, whether the court properly refused a requested instruction bearing upon the result which should follow if the defendant entered into an arrangement to commit burglary and was without knowledge of a plan on the part of his codefendants to commit murder.

148 M.—24.

1. For the purposes of this appeal it may be taken as established that the defendant Joseph P. Redenbaugh, with a premeditated design, killed Mrs. Dunn on April 26, 1917; that the defendant Frank McCool was present participating in the murder; that there was a third man present, and that defendant Mike Moore was concerned in the killing, but was not present.

The killing occurred about 1:30 in the morning. Redenbaugh was a witness for the state and testified to the details. At the time of the trial he was confined in the state prison, under conviction for killing a policeman in Minneapolis two or three days before the killing of Mrs. Dunn. He testified that McCool was present, and that there was a third man, but that the third man was not Shea. The third man he had known for some weeks or perhaps months. He knew him as John or Johnny, knew that he went under different names, and knew that he was called Doyle. He was under the impression that he had been called "Tacoma Johnny." The defendant had lived at Tacoma and there was evidence that about St. Paul he was sometimes known as "Tacoma Johnny."

Redenbaugh and his wife were married in Nebraska on February 17, 1917. Immediately afterwards they lived in Kansas City, Missouri. Redenbaugh came to St. Paul in the early part of April, and with him came Frank McCool and the third man. They stopped at various hotels or rooming-houses in St. Paul or Minneapolis. About April 17 Mrs. Redenbaugh came. She and her husband stopped for a few days at Chickett's Place on West Seventh street. This was a saloon and restaurant and rooming-house. Later they were at Minneapolis, and on the day before the killing Redenbaugh and wife and McCool and wife took rooms at another rooming-house in St. Paul. Mrs. Redenbaugh testified that she knew Shea in Kansas City by the name of Doyle; that he stopped for a time at the apartment of herself and husband; that when she came to St. Paul she saw him about Chickett's place; that Moore was there; that on the afternoon of the day before the killing Shea was about the rooms where the Redenbaughs and McCools were stopping; that Redenbaugh, McCool and Shea were together; that she and her husband and the McCools went out and took their evening meal together; that later in the evening Shea was around again; that some time after 11 o'clock Redenbaugh, McCool and Shea left the rooms, saying they were going to see a

friend, and that in the early morning Redenbaugh returned accompanied by two others. It does not seem that she saw anyone but Redenbaugh. It is not disputed that McCool returned with Redenbaugh, and it is not much in question that the third man was with them. The next morning Mrs. Redenbaugh says that Shea was about, and that Moore came. Again in the afternoon Shea and Moore were there. Moore was the one who was to pay the $3,000, which was the price of the killing, and he was there and paid it. A division was made between the three present at the killing.

Chickett testified that Redenbaugh and wife and McCool and Moore and Shea were about his place, and that Redenbaugh used to call Shea "Johnny Doyle." The defendant had been around with Redenbaugh and McCool before. There is other evidence that Shea was in St. Paul at the time of the murder, and there is evidence that when he was arrested in July, 1920, in Tacoma, he admitted that he was in St. Paul at the time of the murder. He disclaimed any part in it. He gave the murder and the suspicion cast upon him in connection with it as the reason for not coming to Tacoma before. He said, according to the Tacoma officer, that he had been living in Missouri; that he stayed away from Tacoma because of the Dunn murder and the suspicion attaching to him in connection with it; that he knew they were looking for him, and that "the bunch keeps me posted."

The credibility of the witnesses and the inferences to be drawn from their testimony were for the jury. It could justifiably find that the defendant was the John Doyle who came with Redenbaugh and McCool from Kansas City; that the three were together about St. Paul; that they left the rooming-house together the night before the murder; that they went together to the home of Mrs. Dunn, and that the defendant was the third man present at the killing.

2. Redenbaugh, after telling the details of the killing, and the presence of a third man, when pressed by the state as to his identity, said that he was not Shea. He denied that he had seen Shea before. The third man whom he knew at Kansas City, and who came with him to St. Paul, he knew as Johnny, but of his last name he professed to know little, though he knew that he had used different ones. He reluctantly admitted that he knew him at Kansas City as Doyle. He was clearly a

hostile and unwilling witness upon the question of the third man's identity. The county attorney, claiming surprise because of different testimony given at the Dunn and Moore trials, and because of the statement made by Redenbaugh in state prison that he would tell the truth, although he stated at the time that photographs of the defendant shown him did not look like the third man, was permitted to cross-examine and impeach him upon his statement that the defendant was not the third man at the murder. On the preliminary cross-examination Redenbaugh's denials were considerably shaken, and the impeachment discredited him upon his statement that the third man was not the defendant.

The authorities generally hold that the trial court in its discretion may permit a party surprised by the testimony of his witness to cross-examine him; and some, but by no means all, hold that he may impeach him by showing contradictory statements. See 2 and 5 Wigmore, Ev. §§ 902-906; 5 Jones, Ev. § 853, et seq. The Minnesota rule permits cross-examination and impeachment within the sound discretion of the trial court. State v. Johnson, 12 Minn. 378 (476), 93 Am. Dec. 241; State v. Tall, 43 Minn. 273, 45 N. W. 449; Selover v. Bryant, 54 Minn. 434, 56 N. W. 58, 21 L.R.A. 418, 40 Am. St. 349; Lindquist v. Dickson, 98 Minn. 369, 107 N. W. 958, 6 L.R.A.(N.S.) 729, 8 Ann. Cas. 1024; State v. Sederstrom, 99 Minn. 234, 109 N. W. 113.

The county attorney knew of Redenbaugh's testimony in the Dunn and Moore cases. He had his word that if a witness he would tell the truth. It is true that Redenbaugh told him that Shea's photographs did not look to him to be pictures of the third man. But under the circumstances a fair prosecutor could press Redenbaugh with the purpose of refreshing his recollection, or of getting a possible correction or change of his testimony. Redenbaugh knew the fact. The county attorney was advised of his testimony tending to identify the defendant as the third man. He was justified in pressing the unwilling witness with the expectation of getting testimony in harmony with that formerly given, and, when he failed, the trial court under our rule, was justified in the exercise of a sound discretion in permitting him to impeach. Of course counsel, claiming the privilege of cross-examining and impeaching, must proceed in good faith.

The court very clearly charged the jury that the impeaching testimony could not be taken as substantive proof of the identity of Shea and the

third man. It may be assumed that they understood it. The possible harm of such testimony is not altogether in the failure of the jury to see the distinction. It is in the inability of the mind to free itself of the natural probative force of the impeaching testimony. Reasonable hearsay testimony affects the lay mind, and so it does the legal mind accustomed to the rule that hearsay is incompetent. But the law, balancing results, has definitely determined for this state that it is best that a measure of discretion, to be exercised of course with care, be reposed in the trial court to permit impeachment in a particular case. See Selover v. Bryant, 54 Minn. 434, 56 N. W. 58, 21 L.R.A. 418, 40 Am. St. 349. The trial court was justified in holding that a foundation of surprise was laid, and it was within its sound discretion to permit the cross-examination of Redenbaugh and it was not abused.

3. Redenbaugh's testimony was that there was an understanding between him and McCool that Mrs. Dunn was to be killed; that the third man knew nothing of this; that he supposed that they were to steal some diamonds; that he was to help in this; that the "proposition of burglary" of some "valuable stones" was put to him; that the killing had nothing to do with the burglary and was not in furtherance of it; that the third man did not assist or abet in the killing. The claim in behalf of the defendant is that, under such circumstances, he could not be convicted of murder. The evidence was not such as to require a finding in harmony with the testimony of Redenbaugh. His was the only testimony upon the point and it could be believed or disbelieved. Some of his testimony is inconsistent with the claim that the defendant had nothing to do except participate in the burglary. The jury was justified in finding that the three, Redenbaugh, McCool and Shea, planned the killing before they started from the rooming-house in the evening, that they were all similarly armed and worked together in its accomplishment, and the next day divided the price paid through Mike Moore.

4. The defendant submitted a requested instruction, which was refused, to the effect that, if his sole purpose in going to Mrs. Dunn's home was to aid in the commission of a burglary, then he could not be found guilty. The requested instruction, conceding the law to be as claimed by the defendant, was faulty in limiting his purpose to the time of his going, and excluding a purpose formed afterwards, or an assisting or abet-

ting within the statute. G. S. 1913, § 8477. The court charged: "If the evidence establishes the fact that Alice M. Dunn was killed by Joseph P. Redenbaugh with a premeditated design upon his part to cause her death and that this defendant was concerned in the killing or that he aided and abetted in the killing and that he confederated or agreed with Redenbaugh and McCool in planning the killing, then he is guilty of the crime charged. If the defendant was not concerned in the killing, or if the evidence does not establish that defendant was concerned in the killing or had confederated or agreed to the killing or was aiding and abetting therein, then he should be found not guilty." This was a correct statement of the law. It was accurate, though there was evidence of a state of facts such as was claimed in the testimony of Redenbaugh. No more specific instruction was necessary in the absence of a requested one correctly applying the law to the state of facts suggested as existing. This the requested instruction did not do.

We do not discuss the sufficiency of the evidence to make applicable the law as claimed by the defendant. It is clear that the evidence did not require a finding in harmony with Redenbaugh's claim and that there was no error in refusing the instruction requested.

The charge was fair to the defendant and thoroughly clear. The trial, which occurred more than three years after the crime, was impartial and dispassionate throughout. Occasionally the prosecution pressed improper questions quite far enough, but the adverse rulings were prompt, and there was no material prejudice. The defendant had a fair trial.

Order affirmed.