725 N.W.2d 125 (2006)
STATE of Minnesota, Respondent,
v.
Stephron L. WASHINGTON, Appellant.
No. A05-1071.
Court of Appeals of Minnesota.
December 19, 2006.
*130 Mike Hatch, Attorney General, St. Paul, MN; and Jay M. Heffern, Minneapolis City Attorney, Deborah Styles-Brown, Assistant City Attorney, Minneapolis, MN, for respondent.
Leonardo Castro, Chief Fourth District Public Defender, Barbara S. Isaacman, Assistant Public Defender, Minneapolis, MN, for appellant.
Considered and decided by LANSING, Presiding Judge; KALITOWSKI, Judge; and DIETZEN, Judge.

OPINION
LANSING, Judge.
Following a jury trial, Stephron Washington was convicted of two counts of fifth-degree domestic assault. Washington's appeal focuses on three main issues. First, he argues that testimonial hearsay was admitted in violation of his Confrontation Clause rights. Second, he argues that the prosecutor committed prejudicial misconduct. Third, he argues that the district court erred by allowing the jury to have access to a 911 tape during deliberations. Washington also challenges four evidentiary rulings, the sufficiency of the evidence, and his sentence.

FACTS
At midnight, on April 12, 2005, an unidentified woman called 911 and asked to have police sent to her apartment. She told the 911 operator that she had been assaulted by her son's father. Based on what the caller was saying and the sounds in the background, the 911 operator believed that the caller was being assaulted again during the call. The caller identified her assailant as Stephron Washington. Midway through the two-minute call, the caller said that Washington "ran out the back door." She described Washington and the car he would likely be driving.
About five minutes after the 911 call, police arrived at the apartment building from which the calls were made and located the caller, LR. LR confirmed that she was the woman who had called 911. She appeared upset, and the officers asked if she was injured. She told them that Washington had bitten her arm and had hit her with a board. The board was a piece of the apartment's doorframe that had been broken off and had a nail sticking out of it. Officers observed a bite mark on LR's arm and a scratch from the nail. The officers believed they could recognize Washington from prior contacts, but they were unable to locate him. About a half-block from LR's apartment, they found a Jeep Wagoneer that was registered to Washington.
Washington was detained on April 21, 2005. The next day LR recanted and denied that Washington had assaulted her. Although she maintained contact with the prosecutor's office and called on the day of trial to say she was on her way to court to testify, she did not appear.
In a pretrial hearing, the district court concluded that LR's statements in the 911 tape and during the onsite interview were nontestimonial. The district court noted that LR had just been assaulted during the 911 call and that police had not located Washington during the onsite interview. The district court therefore rejected Washington's Confrontation Clause argument and permitted the state to introduce LR's statements. The state also indicated *131 that the police officers would testify that they had met Washington and could identify him. Washington did not object.
At trial, the state played the 911 tape and the officers testified to LR's statements. A defense investigator testified that LR had denied that Washington assaulted her. Washington testified in his own defense and acknowledged being at the apartment on April 12, 2005, but denied assaulting LR. The state introduced Washington's prior convictions for impeachment purposes.
A jury found Washington guilty of two counts of domestic assault and found him not guilty of fourth-degree criminal damage to property. Washington received concurrent sentences of ninety days in the workhouse with sixty-one days stayed for one year and jail credit of twenty-nine days.

ISSUES
I. Were LR's statements to the 911 operator and the police officers made under circumstances objectively indicating that the primary purpose was to enable police to meet an ongoing emergency?
II. Did the prosecutor engage in prejudicial prosecutorial misconduct?
III. Was the 911 recording improperly allowed in the jury room?
IV. Did the district court abuse its discretion in its evidentiary rulings?
V. Was the evidence sufficient to permit the jury to find Washington guilty of domestic assault?
VI. Did the district court properly sentence Washington?

ANALYSIS

I
Under the state and federal constitutions, a criminal defendant has "the right to be confronted with the witnesses against him." U.S. Const. amend. VI; Minn. Const. art. I, § 6. The Confrontation Clause covers not just witnesses who testify at trial but also the admission of hearsay statements that are testimonial in nature. Crawford v. Washington, 541 U.S. 36, 50-51, 124 S.Ct. 1354, 1364, 158 L.Ed.2d 177 (2004). Testimonial statements of witnesses absent from trial are inadmissible unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine. Id. at 68, 124 S.Ct. at 1374; State v. Wright, 701 N.W.2d 802, 809 (Minn.2005), vacated, ___ U.S. ___, 126 S.Ct. 2979, 165 L.Ed.2d 985 (2006).
Neither the United States nor the Minnesota Supreme Court has comprehensively defined "testimonial." The "critical determinative factor in assessing whether a statement is testimonial is whether it was prepared for litigation." State v. Caulfield, 722 N.W.2d 304, 309 (Minn.2006). But statements are nontestimonial "when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." Davis v. Washington, ___ U.S. ___, ___, 126 S.Ct. 2266, 2273, 165 L.Ed.2d 224 (2006). Statements made to enable police to meet an ongoing emergency "need not be limited to the complainant's predicament or the location where she is questioned by police." State v. Warsame, 723 N.W.2d 637, 641 (Minn.App.2006). If statements include both testimonial and nontestimonial material, only the testimonial material must be excluded. Davis, 126 S.Ct. at 2277.
In Davis, the U.S. Supreme Court considered the admissibility of hearsay evidence *132 of police interviews in two separate cases: a 911 call and an onsite interview of a 911 caller. 126 S.Ct. at 2277-78. The Court concluded that, in the 911-call case, the caller was requesting help against a genuine physical threat and that the 911 operator requested information that was necessary for the police to resolve the emergency. Id. at 2276. Consequently, the Court determined that the exchange between the caller and the 911 operator was nontestimonial. Id. at 2277. In the onsite-interview case, the interview occurred at some time after the reported events, and centered on the victim's deliberate recounting of how the events began and progressed. Id. at 2278. During the questioning the police kept the alleged assailant in another room. Id. At the conclusion of the interview, the police had the complainant fill out and sign a "battery affidavit." Id. at 2279. The Court reasoned that the primary purpose of the onsite interview, unlike the 911 call, was "to establish or prove past events potentially relevant to later criminal prosecution." Id. at 2274. The Court therefore held that the onsite interview was testimonial. Id. at 2278.
Washington's Confrontation Clause challenge in this case similarly involves a 911 recording and an onsite interview. Applying the Davis standard, we conclude that statements admitted from LR's 911 call and the onsite interview were nontestimonial.
Under the Davis standard, Washington's challenge to the transcript of the 911 call is easily resolved because the statements were made under circumstances that are nearly identical to the circumstances of Davis. The caller reports that her "son's dad just jumped on me in the hallway" and the record suggests that she was assaulted a second time during the call itself. The operator obtained a description of the assault and of the assailant. Although the operator requested more detail about that assailant than was requested in Davis, the questions sought and obtained descriptive information necessary for the police to identify the suspect and resolve the ongoing emergency. Therefore, as in Davis, the 911 conversation was made under circumstances objectively indicating that the primary purpose of the interrogation was to enable police to meet an ongoing emergency, and the 911 recording was nontestimonial.
Washington's challenge to the admissibility of statements obtained from the onsite interview is less easily resolved because the factual circumstances of the onsite interview in this case do not parallel the factual circumstances of Davis. The officers testified that when they arrived at the apartment they saw that the doorframe was broken and pieces of it were on the floor inside the apartment. LR identified herself as the person who had called 911 and told them that Washington had kicked in the door, struck her with part of the broken doorframe, and had bitten her. The officers asked questions to determine the extent of her injuries and then asked questions about the vehicle that Washington would likely be driving if he had left the area. LR told them that she did not need an ambulance and that she did not want to be transported to a shelter facility, but she requested that officers watch her when she left the apartment to make sure that she was not assaulted again.
While waiting for LR to get her things together to leave the apartment, the officers checked the immediate area around the apartments to make sure that Washington was not there and then checked the surrounding streets for white vehicles the size of a Jeep Cherokee. They found an unoccupied white Jeep Wagoneer that was *133 registered to Washington within one block of the apartment.
The limited statements to which the police testified at trial centered on observing the damage to LR's doorframe, evaluating the extent of LR's injuries, obtaining information that could help determine Washington's whereabouts, and providing for LR's safety. Unlike the circumstances of the onsite interview in Davis, the assailant was still at large and posed an ongoing threat. Davis recognizes that, in domestic assaults, officers who are called to investigate need to obtain information to assess the situation, ensure their own safety, and evaluate the possible danger to the complainant. Id. at 2279. These "exigencies may often mean that `initial inquiries' produce nontestimonial statements." Id. LR's statements from the onsite interview that were admitted into evidence conveyed information that allowed the officers to reasonably respond to the emergent situation. The circumstances objectively indicate that the primary purpose of the interrogation was not to establish or prove past events potentially relevant to later criminal prosecution, but to enable police assistance to meet an ongoing emergency. Hence, the statements were nontestimonial and were properly admitted.
For these reasons we conclude that, under the Davis analysis, the victim's statements in both the 911 call and the onsite interview were nontestimonial. We can find no basis for concluding that the Minnesota Constitution provides any additional protection. We therefore conclude that Washington was not denied his right to confront the witnesses against him.

II
The overarching problem presented by prosecutorial misconduct is that it may deny the defendant's right to a fair trial. State v. Ramey, 721 N.W.2d 294, 300 (Minn.2006). We will reverse a conviction if prosecutorial error, considered in light of the whole trial, impaired the defendant's right to a fair trial. State v. Swanson, 707 N.W.2d 645, 658 (Minn.2006).
If the defendant objects to the prosecutorial misconduct, a new trial will be granted unless the misconduct was harmless beyond a reasonable doubt. State v. Mayhorn, 720 N.W.2d 776, 785 (Minn.2006). Prosecutorial misconduct is harmless beyond a reasonable doubt if the verdict rendered was surely unattributable to the error. Id.
If the defendant failed to object to the prosecutorial misconduct, a new trial will be granted only if the misconduct was plain error. Ramey, 721 N.W.2d at 299. The plain-error doctrine has three components: (1) error, (2) that is plain, and (3) that affects substantial rights. Id. at 298. An error is plain if it is clear or obvious under current law. Johnson v. United States, 520 U.S. 461, 467, 117 S.Ct. 1544, 1549, 137 L.Ed.2d 718 (1997). An error would be clear or obvious if it contravenes caselaw, a rule, or a standard of conduct. Ramey, 721 N.W.2d at 302. A prosecutor's misconduct affects substantial rights if there is a reasonable likelihood that it would have had a significant effect on the verdict of the jury. Id. The state bears the burden of showing that error does not affect substantial rights. Id. The state must therefore show that there was no reasonable likelihood that the misconduct would have had a significant effect on the verdict.
If the defendant establishes that the prosecutor's actions constitute plain error, and the state is unable to meet the burden of showing that there is no reasonable likelihood of a significant effect, the appellate courts then assess whether the error should be addressed to "ensure fairness *134 and the integrity of the judicial proceedings." Id.; Mayhorn, 720 N.W.2d at 785.
In his brief, Washington alleges a wide range of prosecutorial misconduct, primarily in closing argument. We have carefully reviewed the record as it relates to these allegations, and we conclude that Washington has failed to identify any prosecutorial misconduct.
Caselaw establishes that it is error for a prosecutor to disparage the defense or the defendant. State v. Bailey, 677 N.W.2d 380, 403 (Minn.2004); State v. Griese, 565 N.W.2d 419, 427 (Minn.1997). It is also error for the prosecutor to give his or her own opinion about the credibility of a witness. Mayhorn, 720 N.W.2d at 791.
Washington contends that he was denied a fair trial by the prosecutor's plain error of calling him a liar in closing argument when referring to his prior conviction for providing false information to a police officer.
We recognize that, in some cases, it is misconduct to suggest that the witness was lying because it injects into the trial the prosecutor's own opinion on the credibility of a witness. In Mayhorn, the prosecutor suggested that a witness was lying and also stated that Mayhorn "admits that he is a habitual liar." Id. at 788-89. The Minnesota Supreme Court concluded that it was prosecutorial misconduct to provide a personal assessment of the witness's credibility. Id. at 791. But we do not interpret that holding to apply in all circumstances in which a prosecutor suggests that a witness or a defendant is a liar.
In this case, unlike in Mayhorn, Washington's prior conviction for providing false information had been admitted for impeachment purposes. The prosecutor's statement therefore had a clear basis in the record. In arguing credibility, the prosecutor could properly point out to the jury that a person who has lied in the past is more likely to lie again. Under these circumstances, the prosecutor did not commit misconduct.
A prosecutor may also commit misconduct by giving personal assessments of the evidence. State v. Porter, 526 N.W.2d 359, 364 (Minn.1995). In some cases, the use of the first-person pronoun "I" during closing arguments can improperly interject personal opinion into an argument. Ture v. State, 681 N.W.2d 9, 20 (Minn.2004). In this case, however, the prosecutor's use of the first-person statements did not interject personal opinion. Although the prosecutor's closing argument contains a number of first-person statements, these statements are not directed to an evaluation of the validity of the evidence. The use of the first-person statements is more attributable to an awkward construction than to an attempt to gain unfair advantage or improperly use the weight of public office.
A prosecutor may not speculate about events that occurred either at the time of the alleged crime or thereafter, absent a factual basis in the record. State v. Bradford, 618 N.W.2d 782, 799 (Minn. 2000). In closing argument, the prosecutor acknowledged that there was no evidence that LR's account of the events changed because of Washington's actions. Although the prosecutor may have suggested that Washington's conversations with LR affected her recantation, this was a legitimate inference from the evidence that LR's account of the events changed after Washington talked to her. The prosecutor may comment on reasonable inferences that can be drawn from the record. State v. Ashby, 567 N.W.2d 21, 28 (Minn. 1997).
*135 In addition, we note that Washington's defense was that LR did not testify because her initial statements to the police were false. A prosecutor can properly anticipate the defense's theory of the case and point out that the defense's theory cannot explain certain facts. State v. Whittaker, 568 N.W.2d 440, 451 (Minn. 1997). By emphasizing that Washington had talked to LR since the incident, the prosecutor properly responded to, and pointed out, weaknesses in the defense's theory.
Washington points to three statements by the prosecutor that he claims mischaracterize the evidence or make arguments unsupported by the record. In fact, each of these statements has clear support in the record. First, the prosecutor said, "[Y]ou've heard it from this defendant. So no one is disputing that something occurred on this date." This statement was properly based on Washington's testimony that he went to LR's apartment on April 11. Second, the prosecutor said LR was "crying, upset while the officers were there talking with her." This statement is supported by the police testimony that "she was upset, she was crying." Third, the prosecutor asked, "Didn't he admit today that he had spoken to her several times since April 12th?" This statement is supported by Washington's response when the prosecutor asked if he had communicated with LR more than once since April 12. Washington answered that he had.
Washington argues that it was misconduct for the prosecutor to replay the 911 tape during closing arguments. He provides essentially no argument why this was misconduct. Instead, he cites two cases, not involving prosecutorial misconduct, in which tapes were replayed during jury deliberations. The argument replicates his objection to the jury having access to the tapes in the jury room, which we address in the next section of this opinion.
Washington does not point to any particular incidents in which the prosecutor injected emotion into the case. Instead, he simply states, "As the excerpts from her closing clearly demonstrate, the prosecutor encouraged sympathy for LR in multiple ways." In fact, we can find no evidence that the prosecutor encouraged sympathy for LR in any improper way.
Washington also argues that the prosecutor committed misconduct by improperly indoctrinating the jury during voir dire. Washington made a number of objections to the prosecutor's questions and made a motion for a mistrial based on the questions. Although Washington objects to a long list of the prosecutor's questions, we can find no evidence of error. The prosecutor's questions were uniformly directed at the legitimate purpose of identifying bias. She could legitimately ask questions about how jurors would view a victim's refusal to testify. See Minn. R.Crim. P. 26.02, subd. 4(1) (providing that "voir dire examination shall be conducted for the purpose of discovering bases for challenge for cause and for the purpose of gaining knowledge to enable an informed exercise of peremptory challenges"). We therefore conclude that the record reflects no error in voir dire.
Washington's final misconduct argument is that the district court erred by not making a verbatim record of the jury voir dire. Under Minn. R.Crim. P. 26.02, subd. 4(1), a "verbatim record of the voir dire examination shall be made at the request of either party." There is no evidence that a record was requested before voir dire began. Hence, the district court did not err by not providing for a verbatim record of the voir dire.
*136 Under Mayhorn and Ramey, the defendant must still demonstrate prosecutorial misconduct by establishing error that is obvious under current law. Washington has failed to meet this threshold in any of his allegations. We therefore conclude that Washington was not denied his right to a fair trial by prosecutorial misconduct and that a new trial is not required.

III
Under Minn. R.Crim. P. 26.03, subd. 19(1), the district court "shall permit the jury, upon retiring for deliberation, to take to the jury room exhibits which have been received in evidence, or copies thereof, except depositions and may permit a copy of the instructions to be taken to the jury room." Despite the "shall" language, district courts must exercise caution and discretion when deciding whether an exhibit can be brought into the jury room. State v. Kraushaar, 470 N.W.2d 509, 515 (Minn.1991). Washington argues that the jury should not have been permitted access to the tape in the jury room because (1) the tape was a deposition, (2) having the tape in the jury room denied Washington effective assistance of counsel, and (3) having the tape in the jury room was unduly prejudicial. We disagree.
First, the tape was not a deposition under Minn. R.Crim. P. 26.03, subd. 19(1). A "deposition" under the rule is either a deposition taken to preserve testimony or a comparable document. Id. In this case, the primary purpose of the 911 call was to obtain police assistance, not to preserve testimony. And the 911 call was obviously not a planned statement in the manner of a deposition. Therefore, the 911 recording is insufficiently akin to a deposition to be barred by rule 26.03.
Second, having the tape in the jury room did not deny Washington effective assistance of counsel. If a court brings the jury into the courtroom and replays a recording, the defendant may have a right to be present and a right to effective assistance of counsel. United States v. Felix-Rodriguez, 22 F.3d 964, 967 (9th Cir.1994); United States v. Kupau, 781 F.2d 740, 743 (9th Cir.1986). The jury was not brought into the courtroom, and the defendant does not have a right to be present during the actual jury deliberations.
Third, permitting the jury to review the tape was not unduly prejudicial. In some cases, it might be unduly prejudicial to permit a jury to review a tape on its own because it could result in an improper focus on one aspect of the evidence. See, e.g., United States v. Binder, 769 F.2d 595, 600-01 (9th Cir.1985); Kraushaar, 470 N.W.2d at 517 (Tomljanovich, J., dissenting). But allowing a tape in the jury room will not result in undue prejudice in every case. See Binder, 769 F.2d at 600 (analysis depends on "facts and circumstances of the case").
The 911 recording in this case was made shortly after the first assault, and the tape apparently recorded a second assault in progress. The recording was therefore highly probative of whether LR was actually assaulted. On this record we cannot conclude that the jury's access to the tape resulted in undue prejudice or that the district court abused its discretion by allowing the jury to have access to the tape during their deliberations.

IV
Evidentiary rulings rest within the sound discretion of the district court. State v. Moua, 678 N.W.2d 29, 37 (Minn. 2004). We will not reverse a district court's evidentiary ruling unless it is a clear abuse of discretion resulting in prejudice. *137 Johnson v. Washington County, 518 N.W.2d 594, 601 (Minn.1994).
Washington raises four challenges to the district court's evidentiary rulings. We conclude, however, that the district court did not abuse its discretion.
First, there was adequate foundation to admit the 911 tape. Under Minn. R. Evid 901(a), the "requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."
The state claimed that the tape was a recording of LR speaking. The police arrived at the apartment within five minutes of the 911 call. They spoke to LR and she acknowledged calling 911. She described the same assault. This was sufficient evidence to find that the 911 caller was LR. There was thus adequate foundation for the 911 tape.
Second, we disagree that the 911 operator provided improper opinion testimony that requires a new trial. The 911 operator testified that she believed the caller was being assaulted and also testified to her understanding of the recording. The 911 operator's testimony was "rationally based" on her perceptions and was helpful to the jury. Therefore, her opinions were admissible under Minn. R. Evid. 701. In addition, we note that Washington failed to object to this testimony. The failure to object generally constitutes waiver of an evidentiary issue on appeal. State v. Vick, 632 N.W.2d 676, 684 (Minn.2001).
Third, we reject Washington's argument that the officers' references to having previously met him were irrelevant and unfairly prejudicial. The state had to prove that the defendant was the person who committed the crime. The officers' familiarity with Washington was relevant because it allowed them to identify the defendant as the person who LR reported was at the apartment. Because LR did not testify, the officers were the witnesses who identified Washington. At the pretrial hearing, Washington was informed about this testimony and he did not object. The district court therefore did not abuse its discretion by permitting the testimony.
Washington's fourth evidentiary challenge is to the state's use, for impeachment purposes, of his prior convictions for receiving stolen property and providing false information to police. Because Washington did not object and has not demonstrated plain error, he has failed to preserve this issue for appeal. Vick, 632 N.W.2d at 684. In addition, we note that the convictions were first introduced by Washington's attorney. The state thus had a right to respond, and the prosecutor could ask about the convictions. State v. Gutierrez, 667 N.W.2d 426, 435-36 (Minn. 2003). We therefore can find no abuse of discretion.

V
In considering a claim of insufficient evidence, this court reviews the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to allow the jurors to reach the verdict which they did. State v. Fields, 679 N.W.2d 341, 348 (Minn. 2004). The reviewing court must assume the jury believed the state's witnesses and disbelieved any evidence to the contrary. State v. Taylor, 650 N.W.2d 190, 206 (Minn.2002).
Washington argues that there was insufficient evidence to convict him because LR changed her story. Although LR initially stated that she had been assaulted, she later denied being assaulted and she refused to testify. A reasonable *138 jury, however, could conclude that LR was telling the truth at first and was not telling the truth later. Therefore, based on LR's initial statements and strong circumstantial evidence that supported the initial statements, the evidence was sufficient to convict Washington.

VI
Washington argues that "because both convictions were based on the same behavior . . . the sentences should have merged into one conviction." Washington's contention may have some merit, but his brief provides neither argument nor authority for his position. The issue is therefore waived. See State v. Krosch, 642 N.W.2d 713, 719 (Minn.2002) (finding waiver of issues not supported by argument or authority).
Washington's argument about jail credit is similarly waived. The record contains no information on the jail credit that Washington should receive. If Washington's jail-credit issue cannot be resolved administratively through the jail, he may file a motion to correct his sentence under Minn. R.Crim. P. 27.03, subd. 9. See State v. Stutelberg, 435 N.W.2d 632, 634 (Minn. App.1989) (permitting sentencing challenges under rule 27.03 despite previous, unsuccessful challenges).

DECISION
Washington was not denied his right to confront witnesses against him when the district court admitted LR's statements into evidence. In addition, we conclude that Washington has failed to provide threshold evidence of plain error in the form of prosecutorial misconduct, the 911 recording was properly allowed in the jury room, the district court did not abuse its discretion when making evidentiary rulings, there was sufficient evidence to convict Washington, and Washington's sentencing arguments are waived.
Affirmed.