*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1015**

State of Minnesota,
Respondent,

vs.

Ernesto Veraza,
Appellant.

**Filed May 18, 2015
Affirmed
Smith, Judge**

Olmstead County District Court
File No. 55-CR-13-4124

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Mark A. Ostrem, Olmsted County Attorney, James S. Martinson, Assistant County Attorney, Rochester, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Charles F. Clippert, Special Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Bjorkman, Presiding Judge; Hudson, Judge; and Smith, Judge.

## UNPUBLISHED OPINION

**SMITH**, Judge

We affirm appellant's aggravated robbery and kidnapping convictions because (1) the district court did not plainly err by ruling that some of appellant's prior criminal

convictions could be admitted for impeachment if appellant testified; (2) the district court did not plainly err by allowing the prosecutor to cross-examine a defense witness regarding his prior untruthfulness to law enforcement and check forgery; and (3) any error in preventing appellant from eliciting a witness's conclusion about the witness's own bias was harmless.

## FACTS

In the early morning hours of June 21, 2013, M.M. fell asleep in a theater after his janitorial shift. When he awoke, he called his friend K.D. for a ride home. A short time later, he saw K.D.'s car pull into the theater parking lot, driven by appellant Ernesto Veraza, who was accompanied by another man, P.C. Although M.M. had previously worked with Veraza and owed him money at the time, he did not know P.C. M.M. got into the back seat of the car.

While driving, Veraza asked to borrow M.M.'s cell phone. After M.M. gave Veraza his work cell phone, Veraza removed its battery. Rather than driving M.M. home, Veraza drove to a rural area and stopped the car on a gravel road. Veraza and P.C. exited the car and ordered M.M. to get out of the car, empty his pockets, and remove his clothing. When M.M. did not immediately comply, P.C. hit him in the head, and M.M. ran into a ditch. While removing his clothing in the ditch, M.M. managed to toss a second cell phone he was carrying into the grass. After Veraza and P.C. drove away with M.M.'s clothes and work cell phone, M.M. retrieved his second cell phone and called 911.

2

The state charged Veraza with aggravated robbery and kidnapping. Before trial, the state moved the district court to admit evidence of Veraza's prior criminal convictions under Minn. R. Evid. 609 in the event that Veraza testified. Veraza's counsel objected, stating that "all the witnesses in this case have colorful enough histories that I err on the side of presenting more rather than less to the jury," but arguing that two of Veraza's four prior convictions were too similar to the charged kidnapping offense and unduly prejudicial and that another was too old to be admissible. The district court ruled that admitting evidence regarding three of Veraza's prior criminal convictions "allows the jurors to see the whole person to better judge the truth of his testimony," but it allowed the state to name only Veraza's prior forgery conviction, and it required the state to reference the remaining convictions as "unspecified felonies" rather than stating the nature of those convictions.

The state moved the district court to allow it to impeach K.D.'s brother with evidence of a prior criminal conviction under Minn. R. Evid. 609. It also moved the district court to allow impeachment of K.D.'s brother under Minn. R. Evid. 608 with two instances of giving a false name to police and one instance of offering a forged check. During a hearing, Veraza's counsel conceded that "we've been erring on the side of letting in more on this trial," and he agreed with the district court's statement that this was "[b]y virtue of agreement between the State and the defense." Although he argued that any reference to associated juvenile delinquency charges should not be permitted, he conceded that K.D.'s brother's prior conduct of giving a false name to law enforcement was admissible. He argued, however, that the check-forgery conduct was "a closer call."

3

The district court ruled that all three items of prior dishonest conduct were admissible for impeachment under Minn. R. Evid. 608.

During a jury trial, K.D. testified that she had given Veraza and P.C. permission to use her car to pick up M.M. She testified that, after they returned, they told her that they had dropped M.M. off at a friend's house. K.D. testified that she then gave Veraza and P.C. a ride to a friend's apartment. As Veraza exited the car, K.D. saw him grab a pile of M.M.'s clothes from the back seat. Veraza said that M.M. had asked him to take the clothes and "keep them safe."

K.D.'s brother testified for the defense. He testified that he put a change of clothes in K.D.'s car before Veraza and P.C. left to pick up M.M. During cross-examination, the prosecutor asked him whether he had twice previously lied to police officers about his identity, and K.D.'s brother admitted that he had. The prosecutor also asked if he had previously offered a forged check, and K.D.'s brother also admitted that. Neither the prosecutor nor K.D.'s brother mentioned any juvenile delinquency proceedings associated with these instances.

During his redirect examination of K.D.'s brother, Veraza's counsel asked whether K.D.'s brother had ever resided with Veraza, and K.D's brother said that he had. Veraza's counsel then asked, "In your opinion, did that create any bias that gives you any care about the outcome of this case?" The state objected, and the district court sustained the objection.

The jury found Veraza guilty of aggravated robbery and kidnapping, and the district court sentenced him to 82 months' imprisonment.

4

# D E C I S I O N

## I.

Veraza challenges the district court's admission of several of his prior convictions. Because Veraza objected to the admission of his prior convictions on different grounds than he raises here, we review only for plain error. *See State v. Parker*, 282 Minn. 343, 358, 164 N.W.2d 633, 643 (1969) (noting that appellate courts refuse to consider arguments where a trial court objection was based on a different theory); Minn. R. Crim. P. 31.02 (allowing plain-error review of an issue "even if it was not brought to the trial court's attention"). "[T]he plain-error doctrine requires a defendant to establish (1) an error, (2) that is plain, and (3) that affects the defendant's substantial rights." "If the defendant satisfies the first three prongs of the plain-error test, we may correct the error only if it seriously affects the fairness, integrity or public reputation of judicial proceedings." *State v. Beailieu*, 859 N.W.2d 275, 279 (Minn. 2015) (citations omitted). "An error is plain if it was clear or obvious." *State v. Strommen*, 648 N.W.2d 681, 688 (Minn. 2002) (quotations omitted). An error is clear or obvious if it "contravenes case law, a rule, or a standard of conduct." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006). An error affects a defendant's substantial rights "if the error was prejudicial and affected the outcome of the case." *State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998).

Evidence of prior convictions is admissible under Minnesota law, provided that the district court consider

> (1) the impeachment value of the prior crime, (2) the date of
> the conviction and the defendant's subsequent history, (3) the
> similarity of the past crime with the charged crime (the

> greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of defendant's testimony, and (5) the centrality of the credibility issue.

*State v. Jones*, 271 N.W.2d 534, 538 (Minn. 1978). The supreme court has stated that the purpose of allowing impeachment by prior offenses is to "allow[] the fact-finder to make credibility determination by seeing the whole person . . . ." *State v. Hill*, 801 N.W.2d 646, 651 (Minn. 2011) (quotation omitted).

Veraza does not contend that the district court failed to consider the five *Jones* factors. He instead cites a law-review article to argue that "Minnesota misapplies the first factor" and that "Minnesota courts open the doors to improper impeachment by considering the whole person." In short, Veraza argues for a change in the law; he does not contend that the district court failed to follow the law as it is. Since a purported error must be contrary to *current* law in order to be plain, *see State v. Washington*, 725 N.W.2d 125, 133 (Minn. App. 2006), *review denied* (Minn. Mar. 20, 2007), we conclude that the district court did not plainly err by following Minnesota supreme court precedent. *See Lake George Park, L.L.C. v. IBM Mid-Am. Emps. Fed. Credit Union*, 576 N.W.2d 463, 466 (Minn. App. 1998) ("This court, as an error correcting court, is without authority to change the law."), *review denied* (Minn. June 17, 1998).

## II.

Veraza argues that evidence of K.D.'s brother's prior conduct was associated with juvenile delinquency proceedings and was thus inadmissible. Because Veraza only objected to any mention of juvenile delinquency proceedings and conceded the

6

admissibility of the underlying conduct, we again review only for plain error. *See State v. Carridine*, 812 N.W.2d 130, 142 (Minn. 2012) ("Under the invited error doctrine, a party cannot assert on appeal an error that he invited or that could have been prevented at the district court. The invited error doctrine does not apply, however, if an error meets the plain error test." (citation omitted)).

Veraza primarily argues that admission of K.D.'s brother's juvenile delinquency records was prohibited by the rules of evidence. "Evidence of juvenile adjudications is not admissible . . . unless permitted by statute or required by the state or federal constitution." Minn. R. Evid. 609(d). But the state did not seek to admit evidence of any juvenile *adjudications*; it only sought to question K.D.'s brother regarding the underlying conduct: lying to the police and check forgery. Such questions are permissible under Minn. R. Evid. 608(b). *See State v. Haynes*, 725 N.W.2d 524, 530-31 (Minn. 2007) (holding that evidence of lying to police while a juvenile was admissible to impeach a witness under rule 608(b)).

Veraza asserts, however, that *Haynes* is distinguishable because the witness in *Haynes* was not adjudicated delinquent for lying to police as K.D.'s brother was. He contends that, once a juvenile is adjudicated delinquent for conduct, questions regarding the conduct are governed by rule 609, not rule 608. *Haynes* does not provide facts sufficient to support Veraza's distinction because it does not specify if the witness's juvenile conduct had been adjudicated. More importantly, Veraza cites no authority supporting the proposition that an adjudication of delinquency drapes a cloak of secrecy over conduct that could otherwise be the basis for impeachment. Although the supreme

7

court in *Haynes* instructed that "[district] courts should be cautious about allowing such evidence to be admitted if it tends to involve matters that might prejudice the jury," it stated that rule 608 "explicitly acknowledges that such inquiries may be directed at the accused and *there is no exception for juveniles in the rule*." *Id.* at 531 (emphasis added) (quotation omitted). We therefore conclude that the district court did not plainly err by allowing the questions.

Veraza appears secondarily to contend that the prosecutor violated statutory provisions barring disclosure of juvenile delinquency records by including a register of actions listing them with his motion in limine seeking to impeach K.D.'s brother. Records of juvenile proceedings may not be "open[ed] to public inspection" or have "their contents disclosed" absent a court order or as required by statute. Minn. Stat. § 260B.171, subd. 4(b) (2014). Persons who have access to juvenile delinquency records are prohibited from "releas[ing] or disclos[ing] the records to any other person except as authorized by law." Minn. Stat. § 260B.171, subd. 8 (2014). But Veraza offers no authority to support the premise that a register of actions is a "record" of a juvenile proceeding that may not be disclosed. To the contrary, such material seems necessary to the established requirements for impeaching witnesses with juvenile conduct. *See* Minn. R. Evid. 608(c)(2) (requiring that a prosecutor seeking to impeach a defense witness in a criminal case "provide the trial court with sufficient evidentiary support justifying the cross-examination"); *see also State v. Shea*, 148 Minn. 368, 372, 182 N.W. 445, 446 (1921) ("Of course counsel, claiming the privilege of cross-examining and impeaching, must proceed in good faith."). We therefore conclude that the prosecutor did not violate

8

the statute limiting release of juvenile delinquency records and that the district court did not plainly err by allowing the register of actions as part of the state's motion in limine.

**III.**

Veraza challenges the district court's ruling sustaining the state's objection to his question about whether K.D's brother's possible bias. "Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion. On appeal, the appellant has the burden of establishing that the [district] court abused its discretion and that the appellant was thereby prejudiced." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003) (citation omitted). When deciding whether to admit evidence, a district court abuses its discretion if it "base[s] its decision on an erroneous view of the law." *Shea v. Esensten*, 622 N.W.2d 130, 134 (Minn. App. 2001).

Veraza argues that his question was intended to "elicit testimony of bias for or against him," and as such was permitted under Minn. R. Evid. 616. Rule 616 mandates admission of "evidence of bias, prejudice, or interest of the witness for or against any party," but also requires that such evidence be proffered "[f]or the purpose of attacking the credibility of a witness." The rule is intended to limit the introduction of tangential matters relating to a witness's credibility unless there is first some reason offered to doubt it. *Cf. State v. Elijah*, 206 Minn. 619, 626, 289 N.W. 575, 579 (1940) ("The importance of ascertaining the motives which improperly or corruptly influence a witness is so manifest that it ought not to be necessary to do more than suggest the question. After all, jurors like other persons are not likely to believe that a witness has testified falsely or even colored his testimony, unless there was some reason for doing so. Even an

9

untruthful man will not usually lie without a motive." (quotation omitted)); *State v. Kight*, 106 Minn. 371, 373, 119 N.W. 56, 57 (1908) (noting that although it is permissible for a party to inquire as to whether an adverse witness is biased, it is not permissible for the party that called the witness to rehabilitate the witness by "draw[ing] out a detailed statement of the reasons for his attitude").

Veraza's question was intended to enhance the witness's credibility by giving him an opportunity to preemptively disclaim any bias; it was not for the purpose of attacking the witness's credibility. But we need not decide whether the district court's action was erroneous because Veraza has not shown that he was prejudiced. Although Veraza alleges that, as a consequence of the state's sustained objection, "[t]he jury was . . . left with the impression that [K.D.'s brother] may have been biased in favor of Veraza," Veraza offers no reason that he could not have made the same point in closing argument—that merely living with someone does not mean that they are biased in his favor—as he sought to elicit from K.D.'s brother. The record also reflects that, although the prosecutor sought to undermine K.D.'s brother's testimony by extensively highlighting its contradictions with other evidence and K.D.'s brother's own criminal history, he did not argue that K.D.'s brother was biased in favor of Veraza. We therefore conclude that any error was harmless.

**IV.**

Finally, Veraza argues that the combined effect of the district court's evidentiary errors denied him a fair trial. "Evidentiary errors warrant reversal if there is any reasonable doubt the result would have been different" but for the errors. *State v. Litzau*,

10

650 N.W.2d 177, 182 (Minn. 2002). As discussed above, we are not persuaded that Veraza has demonstrated prejudicial error occurred. Even if we assume that the district court's sustaining of the state's objection to his attempt to elicit a disclaimer of bias from K.D.'s brother bias was erroneous, Veraza does not show any compounding effect of errors combining to deny him a fair trial. *Cf. id.* at 184 (explaining how each error "compounded" and "exacerbated" the effects of other errors). Rather, he baldly asserts that "the result would have been different" but for each of the errors he claims. Arguments based on mere assertions are not considered. *See State v. Wembley*, 712 N.W.2d 783, 795 (Minn. App. 2006), *aff'd*,646 728 N.W.2d 243 (Minn. 2007). We therefore conclude that Veraza is not entitled to reversal based on the cumulative effects of any evidentiary errors.

**Affirmed.**